CASES DETERMINED

IN THE

# SUPREME COURT OF NEBRASKA

## JANUARY TERM, 1926.

---

STANDARD OIL COMPANY, APPELLANT, V. CITY OF LINCOLN,
ET AL., APPELLEES.

FILED JANUARY 23, 1926.   No. 25045.

1. Municipal Corporations: CHARTERS. "While a home rule charter of a city, adopted pursuant to the constitutional provisions, may not contravene any provision of the Constitution or of any general statute enacted by the legislature, it is, in all other respects, binding and controlling. A city may enact and put into such charter any provisions for its government that it deems proper, so long as they do not run contrary to the Constitution or any general statute." *Schroeder v. Zehrung*, 108 Neb. 573.

2. ———: ———. "It is within the competency of the electorate of a city to adopt a charter in any form it may deem proper within the limits specified in the Constitution; it may take the form of a grant or a limitation of powers; in the former case all powers not expressly or impliedly granted to the city government are reserved to the people; in the latter all powers are granted to the city government except those expressly or impliedly withheld." *Consumers Coal Co. v. City of Lincoln*, 109 Neb. 51.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Affirmed*.

*Leonard A. Flansburg, E. J. Hainer*, and *William H. Herdman*, for appellant.

*C. Petrus Peterson, Charles R. Wilke* and *R. A. Boehmer*, contra.

*O. S. Spillman, Attorney General*, and *T. J. McGuire*, amici curiæ.

Heard before Morrissey, C. J., Dean, Day, Good, Thompson and Eberly, JJ.

Dean, J.

This suit was brought by plaintiff in the district court for Lancaster county to enjoin the city of Lincoln, and its municipal officers, as such, "from engaging in the business of selling gasoline and lubricating oil to the inhabitants of said defendant city." ·

· Defendant demurred generally to plaintiff's petition. The district court sustained the demurrer and plaintiff electing to plead no further, the suit was dismissed and plaintiff has appealed.

Standard Oil Company is a Nebraska corporation and is engaged, as alleged, "in the business of marketing petroleum products, including 'gasoline and oil', in all the cities and towns in the state of Nebraska, and, more particularly, in the defendant city of Lincoln."

Plaintiff alleges generally that Lincoln has more than 5,000 inhabitants and is governed by and is operating under what is known as a "Home Rule Charter" pursuant to section 2, article XI of the Constitution of Nebraska, which provides:

"Any city having a population of more than five thousand (5,000) inhabitants may frame a charter for its own government, consistent with and subject to the Constitution and laws of this state, * * * and if a majority of such (the) qualified voters (of such city), voting thereon, shall ratify the same, it shall at the end of sixty days thereafter become the charter of said city, and supersede any existing charter and all amendments thereof."

Plaintiff alleges that, under the above constitutional provision, the city framed a city charter which was ratified and adopted by the qualified voters as the charter of the defend-· ant city at an election held November 14, 1917. It is also pointed out that the city council, by appropriate proceedings, subsequently submitted to the people of Lincoln a proposed amendment to the city charter which was duly rati-

fied and lawfully adopted November 4, 1924. The amendment follows:

"Section 13b. The city council shall have power to engage in the business of selling gasoline and oil to the inhabitants of the city, both at retail and wholesale, and for that purpose shall have power to acquire and own such real and personal property as may be necessary and incident thereto. The city shall not charge for gasoline and oil, sold by it, more than the cost thereof to the city, plus the cost of handling the same, including contingencies."

Thereupon the Lincoln city council adopted the following ordinance:

"An ordinance creating and establishing a municipal gasoline department for the sale of gasoline and oil, and prescribing rules for the government and operation thereof.".

Sections 1 and 2 of the ordinance follow:

"Section 1. That there be and hereby is created and established a municipal gasoline department for the purpose of selling gasoline and oil to the inhabitants of the city, both at retail and wholesale, and until otherwise assigned by the city council, the municipal gasoline department is hereby assigned to the department of streets and public improvements. The municipal gasoline department shall be operated pursuant to the rules hereinafter set forth and as the same may be amended, modified or extended.

"Section 2. That the following rules be and they are hereby adopted governing the operation of said municipal gasoline department, to wit:"

Here follow rules from one to eight inclusive, which for the most part have to do with expenditures, the handling of the funds, and the division of the duties under the purely administrative features of the gasoline ordinance among the different departmental members of the city council and which are to be performed by them in their several official capacities. Except as to rules 7 and 8, which follow, the rules, above referred to, need not be reproduced here:

"Rule 7.   Gasoline and oil shall be purchased as directly from the original source of supply as possible, and shall be sold to the inhabitants of the city of Lincoln at the cost thereof to the city, plus the cost of handling the same, including contingencies.

"Rule 8.   All gasoline and oil shall be sold for cash."

Plaintiff alleges that the charter did not empower the city to sell gasoline and oil, but that it is selling it at cost price, plus the cost of handling, including contingencies, and is using money therefore which is raised by taxation of all property in the city, including plaintiff's; that the business is carried on by city officers and employees in city-owned buildings and with city-owned facilities, and that plaintiff is thereby excluded from engaging in such business, and that such business "is not of, and does not pertain to, the government of said defendant city," and that thereby the due process of law clause of the Fourteenth Amendment of the federal Constitution is contravened; that there is no threatened shortage of gasoline and oils in the city; that "there is no agreement, trust or combination" among dealers in Lincoln, or elsewhere, in the gasoline and oil business, and that competition therein is active; that the prices charged by all dealers are not exorbitant and only return a reasonable profit; that neither gasoline nor lubricating oils are necessaries of life; that no emergency requires the city to engage in such business, but it is so engaged solely for the benefit of the buyers; that plaintiff has never been engaged nor financially interested in the production or refining of crude petroleum or other products therefrom; that plaintiff's business is worth more than $25,000, and its property and equipment used therein is worth about $210,000; and that, by reason of the city's engaging in the business complained of, plaintiff's business has "decreased in (gasoline) volume upwards of 30 *per centum*, without any decrease" in overhead costs. It is further pleaded that, by reason of the imposition of valid taxes of every sort on its property, and overhead expenses, plaintiff cannot compete with the city at its prevailing prices, and that,

Standard Oil Co. v. City of Lincoln.

unless the injunction is granted as prayed, plaintiff will be deprived of its property and business without due process of law.

Plaintiff further pleads that the money so used by the city is not for a public purpose but is solely for the benefit of the purchasers of gasoline and oil; that all city taxes, including plaintiff's will be thereby increased; that the defendant city is conducting only a three-pump gasoline service station, which is wholly inadequate to supply the necessary and normal demands of the city's inhabitants, and that it does not intend to provide any more facilities or equipment to furnish gasoline and oils to Lincoln's inhabitants, its only object being to "furnish a supply sufficient in volume to fix and control the price at which gasoline is and may be sold" by plaintiff and other gasoline dealers in Lincoln; that the city's engagement in such business is an "unlawful, unreasonable, capricious, discriminatory, and abusive exercise" of the city's power to regulate the business in question, and is in violation of the Fourteenth Amendment of the federal Constitution, and also of the Nebraska Constitution, in that the business complained of is not a business affected with a public interest; that the city's operation in the business is confiscatory of plaintiff's property and business and "does not apply equally to all other businesses in said city handling and selling to inhabitants thereof products of like general use and consumption;" that the engaging in such sales is in contravention of and does not comply with section 9, art. XV, of the state Constitution, which provides:

"Laws may be enacted providing for the investigation, submission and determination of controversies between employers and employees in any business or vocation affected with a public interest, and for the prevention of unfair business practices and unconscionable gains in any business or vocation affecting the public welfare. An industrial commission may be created for the purpose of administering such laws, and appeals shall lie to the supreme court from the final orders and judgments of such commission."

Plaintiff further contends that to engage in the business complained of by the defendant city is illegal, and that the charter amendment and the powers which purport to be granted thereby, only authorize it to engage in the business of selling gasoline and oil of like kind and class and nature and having properties and uses similar to gasoline; and that lubricating oils for motor vehicles is in kind, class and nature wholly dissimilar to gasoline. Here follow the usual allegations that plaintiff is without an adequate remedy at law, and a plea that the charter amendment shall be judged illegal, unconstitutional and void, and the city officials named herein and their successors in office, and the agents, employees, and servants of the defendant city shall all be enjoined from engaging in the business complained of.

In *Schroeder v. Zehrung,* 108 Neb. 573, we said: "While a home rule charter of a city, adopted pursuant to the constituional provisions, may not contravene any provision of the Constitution or of any general statute enacted by the legislature, it is, in all other respects, binding and controlling. A city may enact and put into such charter any provisions for its government that it deems proper, so long as they do not run contrary to the Constitution or any general statute." To the rule above stated we adhere.

*Consumers Coal Co., v. City of Lincoln,* 109 Neb. 51, is a case wherein it was held that the establishment of a municipal fuel yard for the sale of fuel at retail to the inhabitants of Lincoln, for the reasons therein pointed out, was not within the powers granted the city council, but, in the general discussion of the case, this is said: "It is within the competency of the electorate of a city to adopt a charter in any form it may deem proper within the limits specified in the Constitution; it may take the form of a grant or a limitation of powers; in the former case all powers not expressly or impliedly granted to the city government are reserved to the people; in the latter all powers are granted to the city government except those expressly or impliedly withheld." We adhere to the rule as expressed by us in the above citation.

It has been held that, "Public grants susceptible of two constructions must receive the one most favorable to the public." *Hamilton Gas, Light and Coke Co. v. Hamilton City*, 146 U. S. 258. "Restraints upon governmental agencies will not be readily implied." *City of Joplin v. Southwest Missouri Light Co.*, 191 U. S. 150. And this is said at page 158 in the *Joplin* case: "In *Bienville Water Supply Co. v. Mobile*, 175 U. S. 109, 186 U. S. 212, it was again decided that the granting of franchises to private persons to construct water-works in a city does not preclude the city from afterwards erecting such works and supplying its inhabitants with water."

*Madera Water Works v. Madera*, 228 U. S. 454, is a case taken to the supreme court of the United States from California. In that case the court held, in substance, that, if the Constitution of the state authorizes the construction of utility plants as well after, as before, such plants have been built by private parties, one who constructs such plant cannot invoke the Fourteenth Amendment of the federal Constitution to protect him against loss by the erection of a municipal plant. The court further held that there was nothing in the Constitution of that state that could be construed to mean that municipalities will not construct water-works that will compete with privately owned works built under the provisions of the Constitution giving the right, subject to municipal regulation of charges, to lay mains in the streets of municipalities where there are no public works.

In Maine a statute authorizing the sale of wood and coal without financial profit was sustained by the supreme court of the United States in a case where it was urged that such use of the public money was not for a public purpose and was in violation of the Fourteenth Amendment of the federal Constitution, *Jones v. City of Portland*, 245 U. S. 217.

In *Wolff Packing Co. v. Court of Industrial Relations*, 262 U. S. 522, in referring to the meaning of the expression, "public use," or "public purpose," it was said:

"In a sense, the public is concerned about all lawful busi-

ness because it contributes to the prosperity and well-being of the people.   The public may suffer from high prices or strikes in many trades, but the expression 'clothed with a public interest,' as applied to a business, means more than that the public welfare is affected by continuity or by the price at which a commodity is sold or a service rendered. The circumstances which clothe a particular kind of business with a public interest, in the sense of *Munn v. Illinois* and the other cases, must be such as to create a peculiarly close relation between the public and those engaged in it, and raise implications of an affirmative obligation on their part to be reasonable in dealing with the public. * * * 'Public use' in such cases would seem to be a term of wider scope than where it is used to describe that which clothes property or business 'with a public interest.'   In the former, the private owner is fully compensated for his property.   In the latter, the use for which the tax is laid may be any purpose in which the state may engage, and this covers almost any private business if the legislature thinks the state's engagement in it will help the general public and is willing to pay the cost of the plant and incur the expense of operation."

Plaintiff contends that the defendant city deprives plaintiff of its property without due process of law, in that the city is using public money derived from taxation to carry on the business complained of, and that the money so used is for a private purpose, and not a public purpose.   We do not agree with counsel.   *Green v. Frazier*, 253 U. S. 233, is a case where a group of taxpayers contended that certain acts of the legislature enacted for the establishment of a state bank, a line of warehouses and elevators, flour mills and manufacturing establishments, and for the handling of marketable wheat and the manufacture of flour, and even to establish a home-building association, were all in contravention of the Fourteenth Amendment of the federal Constitution.   But the court said:

"When a state sees fit, for the promotion of the public welfare, to enter into activities which in the past have been

considered as entirely within the domain of private enterprise and to assist them by taxation, the wisdom of its legislation or the soundness of the economic policy involved cannot be considered by this court in passing upon the constitutionality of the taxation."

Plaintiff also argues that the business of selling gasoline and oil "has never been a public utility;" that such business has "never been affected with a public interest," and that it is now and always has been "in the strictest sense of the word purely private business, and universally recognized as a proper and legitimate field for private enterprise." It is also argued that "gasoline and oil are not necessities of life; they do not fall in the same category with water, food, clothing, housing, etc. They have no other, different or greater relation to the peace, order, good government and general welfare of a municipality, and to the lives, safety and health of its inhabitants, than any other commodity, not a general necessity of life, in like general use in such municipality."

In respect of plaintiff's argument upon the issues involved in the present case, it may be observed generally that gasoline has become one of the indispensable commercial commodities of our time. It is well known to everybody that there is scarcely a man, woman or child anywhere who is not directly, or indirectly, either a user of or materially affected by the use of this modern day necessity. In the past decade, in some form, the use of gasoline has steadily increased until its use has now become well-nigh universal. In some respects, it may be observed, it bids fair to revolutionize, in part at least, the railway transportation systems of our country. And it may be noted that this is now practically a reality in respect of the short haul feature of the railway business, both as to passenger and freight traffic, as such traffic is affected by the use of gasoline propelled conveyances. In our large cities and in some of our smaller towns its use has very materially decreased the revenues of the street car systems. Gasoline may be said to be a most obedient servant. By the agency of the automobile

it transports us, both far and near, from place to place; it furnishes much of the power that plows our fields, harvests our grain, and, as above noted, it is used to carry an increasing part of the short haul transportation of our railways. It now furnishes a more and more increasing part of the power that drives our stationary engines. It may be here noted that what is true of gasoline is true of the oils and the petroleum derivatives that are used in conjunction with it and which are involved in this suit. It follows that a commodity, of use so universal, may come within the purview of "public purpose," as distinguished from "private purpose," as the expression is used in the decisions of the courts which have to do with the use of utilities and necessaries by the public generally.

Plaintiff holds no contract that frees it from competition in the conduct of its business into which it entered under the usual conditions which attend the conduct of private business. Can it be said that a grant by the city to conduct a business within a municipality contemplates a grant to be free from competition in a like business in the absence of a specific grant for such exclusive privilege? The state cannot guarantee the successful outcome of any private business enterprise. See *Knoxville Water Co. v. Knoxville,* 200 U. S. 22; *Helena Water-Works Co. v. Helena,* 195 U. S. 383; *Baker v. City of Grand Rapids,* 142 Mich. 687; *Central Lumber Co. v. City of Waseca,* 152 Minn. 201, in addition to the cases hereinbefore cited.

We conclude that the defendant city of Lincoln in carrying on the gasoline and oil business, as it is involved in the present case, does no violence to the Fourteenth Amendment of the federal Constitution nor to any provision of the Nebraska Constitution. Since the power has been delegated to the defendant city, as heretofore observed, to make its own charter, the city may do that which the state may do, or which the state has authorized the city to do, so long as it does not violate the federal or state Constitution or the general laws of the state.

It may be noted that Claude E. Shamp is engaged in sub-

stantially the same business in Lincoln as is the plaintiff herein. Shamp, under an appropriate stipulation with the parties, which met the approval of the district court, became, by plaintiff's counsel, an intervening plaintiff, and he was there joined with plaintiff in this action. The judgment of dismissal of plaintiff's action was likewise rendered against him in the district court and he is also an appellant in this court.

It has. not been made to appear by counsel that the act here in question is violative of the due process provision of the federal Constitution, nor of any other constitutional provision, either federal or state, nor of any general statute of the state of Nebraska.

In view of the facts before us, and for the reasons appearing herein, and under the authorities, we conclude that the judgment of the district court in its dismissal of the action is right, and, as  to plaintiff and intervening plaintiff, is in all things

AFFIRMED.

ROSE, J., dissenting.

This is a suit in equity brought by the Standard Oil Company and Claude E. Shamp, pleading separately, plaintiffs, in the district court for Lancaster county, to enjoin the city of Lincoln and the members of its council from conducting at cost in competition with plaintiffs the business of selling gasoline and lubricating oils in the city of Lincoln. Defendants demurred to the petitions of plaintiffs on the ground that the facts stated therein were insufficient to constitute a cause of action. The district court sustained the demurrer. Plaintiffs elected to stand on their petitions and the suit was dismissed. Plaintiffs appealed to the supreme court where the dismissal was affirmed. *Standard Oil Co. v. City of Lincoln, ante,* p. 243. On motion of plaintiffs for a rehearing a reargument was granted. I was unavoidably absent when the cause was first submitted on appeal and took no part in the subsequent opinion and affirmance but I participated when the questions raised by the pleadings were reargued. By a majority vote a rehearing,

upon a reconsideration of the merits of the case, was denied. Being convinced that the demurrer should have been overruled I dissented from the former opinion, adherence to which resulted in the denial of an injunction.

I do not question the validity or wisdom of legislation authorizing the state or a city to enter the domain of private enterprise with money raised by taxation whenever the government properly adopts that method of procuring for the public the necessaries of life, there being no other adequate supply; of preventing conspiracies, trusts and other combinations in restraint of trade from stifling competition and arbitrarily fixing extortionate prices which injure the public; of counteracting the unlawful lowering of prices in some localities and recouping the losses, with profits made elsewhere, for the sole purpose of destroying the business of competitors; of exercising other legitimate functions of government generally for the protection of society. The unlawful destruction of competition and the exacting of unconscionable prices in the sale of the necessaries of life are inconsistent with freedom of contract. When prompted by hunger, thirst or cold to pay an illegal price-fixing monopoly extortionate prices for food, water and shelter, or other necessities of life, a purchaser in want may lose his liberty of contract. To prevent public calamities a state or city may enter what was formerly a private business, but under our republican form of government, as distinguishable from a socialism or a communism, public taxes are not available for a purely private business unless demanded by a public exigency. A city should not itself commit the wrongs it condemns to justify an entrance into a private enterprise.

The Constitution of the United States made provision for the protection of the individual from the unlawful aggressions of every department of government. To the private citizen the fields of invention, industry, art, science, literature and labor were opened with the prospect of honest rewards. The bills of rights in both state and federal Constitutions protect the individual in the ownership and con-

trol of property, including freedom of contract and the privilege of selecting a lawful avocation. The present industrial prosperity and all else that exalts and ennobles humanity under the state and federal Constitutions are due generally to individual effort and honorable reward without much extraneous aid from governmental meddling in the legitimate business of individuals.

Whether taxes are levied and collected for a private purpose depends on the facts of each particular case. The statute is not the test on the issue of constitutionality. For the protection of individual rights guaranteed by the Constitution, the court, when its power is properly invoked, is bound to inquire into the validity of a statute or ordinance. Neither the legislature nor the executive can prevent such an inquiry.

The decision in this case cites two former opinions which, in my judgment, are inapplicable to the admitted facts now under consideration. *Standard Oil Co. v. City of Lincoln, ante,* p. 243, citing *Schroeder v. Zehrung,* 108 Neb. 573, and *Consumers Coal Co. v. City of Lincoln,* 109 Neb. 51.

In the present instance plaintiffs pleaded the constitutional and legislative provisions under which the city assumed to act. It adopted a "Home Rule Charter" and under it passed an ordinance authorizing itself to engage in the business of selling gasoline and oil and to acquire the necessary real and personal property for that purpose. The ordinance limited the sale price of oil and gasoline to cost, including handling and contingencies. A municipal plant was established with public funds and the city engaged in the business of selling oil and gasoline at cost in competition with many private dealers having distributing stations in different parts of the city.

The petitions state in detail the following facts thus summarized: There has never been in Lincoln any actual or threatened shortage in the supply of gasoline and oils. The public demand for these commodities is fully supplied at all times from numerous filling stations owned and operated by private individuals and competitors at convenient places

throughout the city. The merchants are in competition with each other. There is no price-fixing by dealers, combinations or trusts. In reality competition is open, active, untrameled and complete. The prices exacted by dealers generally are not exorbitant and only pay cost and a reasonable profit. Plaintiffs have invested large sums of money in permanent equipment and have acquired good will in contemplation of a long period of business activity. They cannot carry on their business without a profit nor compete with the city in prices while the latter is selling the same commodities in the same market at cost. Private dealers conduct their enterprises with private capital and are required to pay taxes, while the city is a competitor with public money and without liability for the payment of taxes. The effect of the city's competition with its prices fixed by ordinance at cost is to confiscate the property of plaintiffs and drive them out of business. The details of the facts outlined and other allegations of the petitions negative every emergency which could be lawfully invoked to draw the city into competition with private enterprise in the business of selling gasoline and oils. The facts showing the circumstances under which the city proceeded are fully pleaded in the petitions and are admitted by the city in its demurer.

If what is alleged in the petitions and admitted by the demurrer is true, defendants themselves are committing the very iniquities which, when committed by private individuals, would justify municipal competition with private enterprise. The ruling on the demurrer must be tested by what is pleaded in the petition. By that standard money is raised by taxation of plaintiffs' property to destroy it. If the city may engage in a private business under the facts pleaded and admitted it may also, by the same methods and for the same reasons, conduct at cost with money raised by taxation, newspapers, department stores, groceries, plumbing establishments and every other private business. This is socialism and communism, twin enemies of the Republic. If the facts are as pleaded in the petitions, the

money exacted in taxes from plaintiffs by the city to conduct the business of selling gasoline at cost is used for a private purpose and amounts to the taking of property without due process of law within the meaning of the state and federal Constitutions. If the city has become a competitor with the selling price fixed at cost, as alleged and admitted, the inevitable result will be to impair or destroy property of plaintiffs and deprive them of their constitutional right to pursue in Lincoln a lawful business of their own choosing, to control their own property and to exercise freedom of contract in respect to it. The governmental interference with lawful private business, the undermining of individual initiative and honorable reward and the menace of socialism and communism may well alarm all who love their country.

In my opinion the demurrer should be overruled, our former affirmance vacated, the dismissal below reversed, and the cause remanded for further proceedings.

GOOD, J., concurs in the dissent.

Note—See 28 Cyc. 260 (Ann.), 264 (Ann.).