CLARENCE NEUMANN ET AL., APPELLANTS, V. JOHN W. KNOX, MAYOR OF CITY OF SUTTON ET AL., APPELLEES: FAIRBANKS, MORSE & COMPANY, INTERVENER, APPELLEE.

FILED JUNE 9, 1927.  No. 25848.

1. Municipal Corporations: ILLEGAL EXPENDITURES: INJUNCTION. "A resident taxpayer, without showing any interest or injury peculiar to himself, may enjoin illegal expenditures by a public board or officer." *Woodruff v. Welton,* 70 Neb. 665.

2. ———: ELECTRIC LIGHTING PLANT: PURCHASE OF APPLIANCES. A contract for the purchase of an engine, machinery and appliances for repairing and remodeling a municipal electric light plant, at a cost of more than $500, contemplates an "improvement," within the meaning of section 4180, Comp. St. 1922, as amended by chapter 51, Laws 1925.

3. ———: ———: ———: ADVERTISING FOR BIDS. Section 4180, Comp. St. 1922, as amended by chapter 51, Laws 1925, construed, and *held* to require the council of a city of the second class, before entering into a contract for the purchase of an engine, machinery and appliances for the repair and remodeling of a municipal electric light plant, where the cost thereof exceeds $500, to first advertise for bids for the furnishing of such engine, machinery and appliances.

APPEAL from the district court for Clay county: WILLIAM A. DILWORTH, JUDGE. *Reversed, with directions.*

*Sloan, Keenan & Corbitt* and *John B. Scott,* for appellants.

*Stiner & Boslaugh, Edmund P. Nuss* and *Dressler & Neely,* contra.

Heard before GOSS, C. J., ROSE, DAY, GOOD, THOMPSON and EBERLY, JJ.

GOOD, J.

This action was brought by a number of resident taxpay-

ers of the city of Sutton who are patrons of the municipal
electric light and water plants of said city and users of the
electric current generated by said light plant, on behalf of
themselves and others similarly situated, to enjoin the city
officials of said city from carrying out or proceeding with
a certain contract between the city and Fairbanks, Morse
& Company for the purchase of an engine, other machinery,
appliances and accessories thereto for the city's light plant,
and to declare said contract illegal and void. Fairbanks,
Morse & Company intervened and joined with the city of-
ficials in defending the action. The defendants and inter-
vener admit the execution of the contract and the intention
to proceed to carry it out unless enjoined, and contend that
the contract is valid and enforceable. A trial of the issues
resulted in a finding and decree for defendants and inter-
vener. Plaintiffs appeal.

The contract in question provided for the purchase by
the city of machinery, therein described, for a price in ex-
cess of $30,000, and also contemplated, in effect, a loan to
the city of more than $5,000; that the contract price should
be paid by warrants drawn upon the water and light fund
of the city, and that the purchase price should not be a gen-
eral indebtedness of the city for which the city's general
fund would be liable. Plaintiff's allege that the contract was
illegal and void for various reasons, among them, that said
contract was for a sum in excess of $500 and was let with-
out first advertising for bids, in violation of the provisions
of section 4180, Comp. St. 1922, as amended by chapter 51,
Laws 1925. Defendants and intervener urge that plaintiffs
have not legal capacity to maintain the action, and that, as
private citizens, they cannot maintain an action to restrain
the acts of public officials, unless they show that they will
suffer an injury as taxpayers different in kind, and not
merely in degree, from that suffered by the public generally,
and contend that, under the facts disclosed in this case,
plaintiffs do not show that they will suffer any injury by
reason of the contract if it is carried out.

The contract calls for the expenditure of upwards of

$35,000. It is true that it provides that this sum shall be paid by warrants drawn upon the water and light fund of the city. The city owns its light and water plants, and they have been earning a profit for the city. This profit has been, and doubtless would continue to be, available to meet other expenditures of the city that would be otherwise raised by taxation. The appropriation of these profits to meet the city's obligation, which would be created by the contract in question, would necessarily affect every taxpayer of the city. Plaintiffs, as patrons of the city's light and water plants, would be required to pay rates for water and electric current which might be materially affected by the expenditures contemplated by the contract between the city and intervener.

We think the question presented has been definitely settled against the contention of defendants and intervener in the recent cases of *Fischer v. Marsh,* 113 Neb. 153, and *Woodruff v. Welton,* 70 Neb. 665. In the latter case it is held: "A resident taxpayer, without showing any interest or injury peculiar to himself, may enjoin illegal expenditures by a public board or officer." The rule thus announced was reaffirmed in *Fischer v. Marsh, supra.* We think the plaintiffs come within the rule announced, and are therefore entitled to maintain the action.

The most important question for consideration relates to the right of the city to enter into such a contract without first advertising for bids. The statute, relied upon by plaintiffs as requiring the council to advertise for bids, is contained in section 4180, Comp. St. 1922, as amended by chapter 51, Laws 1925. The section is one of a series which defines the powers and duties of city officials. The first part of section 4180, as amended, defines the duties of the city engineer, and then provides as follows: "Before the city council or village board of trustees shall make any contract for building bridges or sidewalks, or for any work on the streets or for any other work or improvement which exceeds five hundred dollars ($500) in cost, an estimate of the cost thereof shall be made by the city or village engineer and

submitted to the council, or board of trustees, and no contract shall be entered into for any work or improvement for a price exceeding such estimate, nor without advertising for bids."

It is clear that if the contract in question is governed by the provisions of the quoted statute, the council could not enter into a contract for the purchase of an engine and appliances for a light plant in a sum in excess of $500 without first advertising for bids. Defendants and intervener argue that the statute quoted has no reference to such articles as are described in the contract; that the engine, machinery and appliances are not works or improvements, within the meaning of the statute; that, in any event, the statute is intended to apply only to street work or improvements; that the rule of *ejusdem generis* is applicable, and that the words "other work or improvement" are limited to things of the same character as those specifically enumerated in the preceding part of the quoted section. Defendants and intervener cite, as sustaining their contention that the engine, machinery and appliances do not fall within the term "work or improvement," a number of cases, which we shall now examine.

The first case cited is *City of Trenton v. Shaw,* 49 N. J. Law, 638. In that case it is held that a charter provision of a city which requires all contracts for doing work and furnishing material for any improvement, provided for under the act, shall be given to the lowest bidder applies only to contracts relating to the streets, and not to one for furnishing rubber hose for the fire department. The next case cited is *Sanitary District of Chicago v. Blake Mfg. Co.,* 179 Ill. 167. In that case it is held that a statute, providing that all contracts for work, the expense of which shall exceed $500, shall be let to the lowest bidder, did not apply to a contract for hiring pumps at $42.50 a day, when no definite time was fixed and the contract might be terminated at any time. The next case cited is *Electric Light & Power Co. v. City of San Bernardino,* 100 Cal. 348. The opinion in that case holds that the lighting of streets with electric

lights, placed above the intersection of streets, is not street work, within the meaning of the statute, providing that, in the erection of public buildings and in all sewer and street work, it shall be done by contract, let after notice by publication. The next case is *Tanner v. Town of Auburn,* 37 Wash. 38. The opinion in that case holds that a contract for lighting the streets and public places of a town is not one for the erection, improvement or repair of a public building or work, or for street and sewer work, within the meaning of the statute, which requires a contract for such purposes to be let to the lowest responsible bidder. Another case cited is *Chippewa Bridge Co. v. City of Durand,* 122 Wis. 85. The opinion in that case does not support the contention of defendants and intervener, but, as we interpret the opinion, it holds to the reverse. In our opinion, the cases cited are not in point and do not sustain the view contended for by defendants and intervener. We are convinced that an engine, machinery and appliances for the altering and remodeling of an electric light plant fall within the term "improvement," as used in the statute quoted.

It is next argued by defendants and intervener that the statute requiring advertisement for bids relates only to improvements upon the streets and for buildings. It is contended that the rule *ejusdem generis* is applicable and tha. the words "other work or improvement" are limited to things of the same character as the specific items that precede it in the statute. The preceding things mentioned in the statute are the building of bridges or sidewalks. This provision is followed by the phrase, "or for any work on the streets," which, in itself, is a general clause and would cover any and every kind of work done upon the streets. Then follows the clause: "or for any other work or improvement which exceeds five hundred dollars ($500) in cost." Were it not for the intervening general clause, there would be reason for applying the rule as contended for by defendants and intervener.

In determining whether the rule, as contended, should be applied, it is proper to consider: What was the object

of the legislation?  It is evident that the legislature was intending to protect the citizens of cities and villages in the expenditure of their moneys by their officials, and also to protect the taxpayer from possible venality of the officials and prevent them from entering into improvident contracts for work or improvements, of the cost of which they might not be well advised.  The legislature doubtless believed that the public would be more likely to receive fair treatment, and there would be less likelihood of improvident contracts being entered into, if bids were advertised for and contracts publicly let for improvements of any considerable amount.  We think it may be safely presumed that members of the city councils and village boards are more likely to be acquainted with the cost of ordinary street improvements and repairs than they would be of such machinery as is contemplated by the contract in question.  They would be more likely to know the cost of brick, cement, curbing, guttering, paving, concrete, gravel, and such items, than of expensive machinery for an electric light plant.  It is only at very infrequent intervals that such an expenditure, as called for by this contract, would be required in any city of the second class, while street work and improvements are matters occurring at frequent intervals and would be, therefore, very much more likely to be within the knowledge of the average city official. It does not seem reasonable to suppose that the legislature would require a contract for grading, erecting bridges, culverts, curbing and paving, when it exceeded $500, to be let only upon advertising for bids, and at the same time permit city officials to enter into contracts for amounts totaling many thousands of dollars for the purchase of machinery and appliances for an electric light plant, as to which they would have, in all probability, little actual personal knowledge.

It is but fair to observe that no contention is made in this case that the members of the council were acting corruptly or with other than the best of motives.  No corrupt motive has been attributed to them.  The evidence

discloses, however, that the contract, attempted to be let, was not a provident one. It appears that other contractors would have furnished machinery and appliances, equivalent to those called for by the contract, for several thousand dollars less than the contract price. It illustrates forcibly what we deem the wisdom of the legislature in requiring that, before such contracts should be entered into, bids should be advertised for, so that there may be competition in bidding and the public may be protected through contracts publicly entered into.

We are satisfied that a correct interpretation of the statute requires that a contract for the purchase of an engine, machinery and appliances for an electric light plant, when the same exceeds $500, shall not be entered into until bids have been advertised for, as provided in the statute above referred to.

The view we have taken of the questions discussed herein renders it unnecessary to consider other questions raised and discussed in the briefs and on oral argument. From what has been said, it follows that the judgment of the district court should be and is reversed and the cause remanded, with directions to enter an injunction permanently enjoining the defendants from carrying out the contract in question.

REVERSED.