CITY OF HUDSON, Plaintiff, *v.* BOARD OF EDUCATION OF THE CITY OF HUDSON and Another, Defendants.

Supreme Court, Special Term, Columbia County, March 7, 1936.

*R. Monell Herzberg, Corporation Counsel,* for the plaintiff.

*Coffin, Coffin & Inman* [*Ellis J. Staley* of counsel], for the defendant Board of Education.

*Eidlitz, French & Sullivan,* for the defendant John H. Eisele Co., Inc.

RUSSELL, J.   The plaintiff, City of Hudson, has applied for an injunction pending the determination of the above-entitled action to restrain the defendants from building a new high school under the contract executed by the defendant board of education of the City of Hudson, on or about the 14th of January, 1936; also restraining the defendant board of education from disposing of the sum of $275,000, proceeds from the sale of the bonds to the Federal Emergency Administration of Public Works and to further restrain the board of education from entering into any other contracts for the construction or furnishing of said new high school.

The plaintiff also seeks permission to return to the defendant Federal Emergency Administration of Public Works the proceeds of the sale of the $275,000 in bonds together with any grant the plaintiff may have received, and receive in return the canceled bonds in the sum of $275,000.

The proposition for the creation of a debt for the construction of the new high school was approved at a tax election by vote of the taxpayers of the city of Hudson on the 21st day of January, 1935. The common council approved a loan and grant agreement between the board of education and the United States of America, whereby the Federal government agreed to grant forty-five per cent of the cost of the project, but not to exceed $225,000, and also to purchase

bonds of the city of Hudson in the sum of $275,000. This agreement was approved by the common council November 8, 1935. The city treasurer received $275,000, the proceeds of said bonds, and also the sum of $125,000 from the United States on account of its grant for the construction of said high school. The balance of the grant, namely, $100,000, or such sum as will represent forty-five per cent of the cost of the project, is still due from the United States. The bond issue expressly stated that it was not to be construed to authorize the issuance of bonds in contravention of any constitutional or statutory debt limit applicable to the city.

The contract was let to John H. Eisele Co., Inc., the lowest bidder. The contract was approved by the corporation counsel on January 14, 1936. It appears from both the moving and answering papers that the contractor has incurred a premium obligation of upwards of $3,000. It has also contracted with subcontractors for the performance of certain work and with materialmen in approximately $160,000. It has also incurred an obligation of $20,000 to its subcontractors and materialmen for work already performed by them in preparation for construction work. It further has expended in preparation for the work approximately $3,300; erected field offices upon the site and delivered to the site certain material and equipment required for the work.

The plaintiff in his complaint, among other things, relies mainly upon two charges of alleged illegality to succeed: *First*, the alleged invalidity of the report and notice of the common council of the city of Hudson in connection with calling a special election to vote upon the project for the construction of a new high school; *second*, the alleged invalidity of the issuance of $275,000 of bonds on the ground that such issuance exceeds the debt limit of the city of Hudson.

The moving papers reveal that the notices published in two official newspapers were inaccurate in that one of the notices represented that the plaintiff would receive a grant of thirty per cent, while the other represented that the plaintiff would receive from the Federal government a grant of forty per cent of the cost of the project. The question now arises does such a variance in the publications invalidate the vote of the people. It conclusively appears that the people were not misled to their detriment because they received a grant of forty-five per cent instead of thirty or forty per cent as represented in the newspapers. The mistake, in my opinion, was a mere irregularity and not an intentional or misleading defect to deceive the people at the time they voted. The rights of individuals dealing with municipal authorities was well settled in *Moore* v. *Mayor* (73 N. Y. 238, 245), which held: " Individuals dealing with

municipal authorities may, without incurring extra hazard, assume that acts of the general governing body within their general powers, which are published, represented and held out as valid with invitations to individuals to enter into engagements and expend money and labor on the faith of them, are in fact as represented, and to deal upon the faith of such assumption, and the corporation having received the fruits of engagements entered into on the faith of such representations should be estopped from alleging a mere irregularity to avoid them."

The people were expressly notified that they were to vote for a sum of $360,000. This was required by the charter of the city of Hudson (Laws of 1921, chap. 669, § 170), which required the common council in case of expenditure of money for any extraordinary or special purpose to "cause a report to be published in the official newspapers stating the objects for which such expenditure ought to be made, the amount which it would require to be raised and the reasons which the common council believes render it necessary or expedient, together with a notice that upon a day fixed therein, and which shall be at least three weeks after the first publication of such report and notice, a special election shall be held at some central and convenient place therein designated at which the question whether the amount required for such expenditure shall be raised by a special tax will be submitted to the qualified electors for their determination."

There was no omission in the fulfillment of the requirement of the statute. The publication of the percentage of grant was surplusage. It might have been enlightening and an inducement to the voters, but in the fulfillment of the regularity of the statute the percentage was not an essential element. In fact, the voters received as a grant more than the notice held out.

As to the constitutional debt limit of the city, the plaintiff relies upon several items which in constituting a debt differ greatly from the position of the defendants. The contention of the plaintiff that the city of Hudson is under a legal and moral debt to the cemetery commission in the amount of $60,271.94 constituted as follows:

| | | |
|---|---:|---:|
| " Perpetual Care Fund | $32,067 | 29 |
| Cemetery Maintenance Fund | 25,818 | 31 |
| Interest on above funds | 2,386 | 34 |
| Total | $60,271 | 94 " |

is not well founded in law. The liability of the city for repayment of the perpetual care fund is dependent upon the faithful application of this fund. The debt in the cemetery bond sinking fund or

cemetery maintenance fund was created mainly by embezzlement. The city, therefore, is not legally liable to the commission for this fund of $25,818.31. The city might consider the repayment of this fund a moral obligation, but it is in no sense a legal obligation. The income, however, received by the city belongs to the cemetery commission.

Without analyzing in detail other items of indebtedness as claimed by the city, I have concluded that the city has not reached its constitutional debt limit.

It is well settled " that where substantial expenditures have been made on the strength of an ordinance or franchise, the municipality may be estopped to deny its validity, if not clearly *ultra vires.*" (Lawrence Eq. Juris. § 1064.) The proceedings taken by the common council and the vote of the people at the tax election were certainly not *ultra vires.* Their acts were clearly within the express power of the charter.

The contractor has already gone to considerable expense in preparing for the erection of the new high school and has also entered into subcontracts to a large amount. The action of the common council and the vote of the people have in effect operated to estop the city from now enjoining the board of education from the expenditure of money received and the contractor from performing his contract. (*Louisville* v. *Cumberland Telephone Co.,* 224 U. S. 649, 662.)

A court of equity will exercise its jurisdiction over public officials and public bodies to control their action when their action becomes a breach of trust affecting the public or when their acts are illegal acts injuriously affecting the rights of the citizens of a municipality, but where their acts are legal the court will not act in a supervisory capacity. In some instances a court of equity will grant relief to the taxpayers of a municipality when the act of an official or an official body has done something which is illegal or oppressive. The proceedings for the construction of this new high school were not illegal. The taxpayers of Hudson may consider that they border upon being oppressive, but the taxpayers have brought that oppression upon themselves by their vote.

It is, therefore, my conclusion that the temporary injunction, heretofore granted, be vacated and the motion for an injunction during the pendency of the action be denied.

Submit order.