MYRON D. NOBLE ET AL., APPELLANTS, V. THE CITY OF LINCOLN, A MUNICIPAL CORPORATION, ET AL., APPELLEES.

43 N. W. 2d 578

Filed July 13, 1950. No. 32827.

*Davis, Stubbs & Healey,* and *Richard D. Wilson,* for appellants.

*John Jacobson* and *C. Russell Mattson,* for appellees.

*Leonard A. Flansburg* and *Charles Flansburg,* amicus curiae.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action by Myron D. Noble, Charles H. Arnold, Arthur A. Dobson, Chas. S. Elce, James R. Reed, and John K. Selleck as citizens, voters, residents, and taxpayers of the city of Lincoln, Nebraska, plaintiffs, against the City of Lincoln, Nebraska, as a municipal corporation, Clarence G. Miles, mayor, and Thomas Pansing, Rees Wilkinson, Ferne Orme, Arthur J. Weaver, John Comstock, and Roy A. Sheaff, members of the city council of the city of Lincoln and Theo Berg, city clerk of the city of Lincoln, defendants, the purpose of which is, under the Uniform Declaratory Judgments Act, to have declared the rights, duties, and obligations of the mayor and city council under existing charter amendments, which amendments will be specifically designated herein; to have declared a duty and obligation on the part of the defendants to proceed with construction of a city auditorium pursuant to plans made and steps taken under the terms of these charter amendments; to enjoin the defendants from holding an election the purpose of which will be to ascertain whether or not the amendments referred to shall be changed so as to nullify certain of the provisions thereof under which large expenditures of money have been made and require the location of the auditorium on a site other and different from the one acquired pursuant to the existing charter

amendments; and for a mandatory injunction requiring the defendants to proceed with the construction of the auditorium on the site which has been acquired.

The cause was submitted to the district court on petition of the plaintiffs and a general demurrer joined in by all of the defendants. The demurrer was sustained. The plaintiffs elected to stand upon their petition whereupon a judgment was entered dismissing the action. From this judgment the plaintiffs have appealed.

The question for determination here therefore is as to whether or not the petition states a cause of action. In making the determination this court must assume that all pertinent facts well pleaded are true and accordingly adjudicate. Hallstead v. Perrigo, 87 Neb. 128, 126 N. W. 1078; Panebianco v. City of Omaha, 151 Neb. 463, 37 N. W. 2d 731.

The petition in this case is of great length and it will not be quoted herein. An effort however will be made to set forth sufficient of its salient features to enable a comprehensive consideration of questions involved.

By the petition it is declared that the city of Lincoln is a municipal corporation operating under a home rule charter adopted pursuant to the Constitution of Nebraska.

It is interpolated here that the home rule charter was and is subject to amendment and that no question is raised by plaintiffs as to the constitutional procedure employed in the effort proposed to amend the charter of which complaint is made in this action.

Reverting again to the petition, it is therein declared that on May 2, 1939, an election was held at which by a sufficient vote an amendment to the charter of the city of Lincoln was adopted granting the city council power and authority to purchase and acquire real estate abutting on 15th Street between K and R Streets as a site for a public building for a city auditorium and for other public purposes and to erect thereon such building. It authorized the levy of a tax of not exceeding $75,000

annually for a period of ten years for the purpose of opening and widening 15th Street between K and R Streets and for the purpose of acquiring or purchasing a site and erecting a building thereon. Following a canvass of the vote the city council declared the amendment adopted. Thereafter by ordinance the city council caused to be spread a tax levy of .761 mills upon all taxable property within the city including that of the plaintiffs.

In May 1941 a similar proposal to amend the charter was submitted to and adopted by the voters of the city. The only significant change was that this one extended authority to equip and furnish the building whereas the earlier one did not. Pursuant to the adoption of the amendment the city council caused to be spread a tax levy of .793 mills upon all taxable property within the city again including that of plaintiffs.

Under authority vested by the amendment of 1941 the city council pursuant to an ordinance dated August 14, 1941, proceeded to issue general obligation bonds for which the city received the contract price of $1,100,000. At the time of the commencement of the action bonds of the issue were outstanding in the amount of $715,000. The bonds were issued, by recital therein contained, pursuant to, among other things not necessary to be mentioned here, the charter amendment in question and for the purpose of purchasing and acquiring real estate abutting on 15th Street between K and R Streets as a site for the erection of a public building to be used as a city auditorium and for other public purposes and for the purpose of opening, widening, and improving 15th Street between K and R Streets.

Pursuant to the authority of the amendments in question, in 1941 title to a certain block of real estate between 15th and 16th Streets and between M and N Streets was acquired by the city of Lincoln at a cost to the city of $46,750 for the purpose of erecting thereon the auditorium contemplated by the charter amend-

ment. Also pursuant to the amendments street improvements were made on 15th Street between K and R Streets at a cost of $270,250; for architect's study, plans, and specifications there has been expended the total amount of $22,943.50; and there has been expended on a contract for the installation of an ice rink in the contemplated auditorium the amount of $2,000. These amounts were paid out of the tax levies authorized and the proceeds of the sale of the general obligation bonds.

Tax levies have been made in varying amounts over the years from 1940 to 1949 inclusive and additional levies will be required to redeem the outstanding bonds.

Because of conditions attending the late World War and the unavailability of essential materials and shortage of labor nothing has been done in furtherance of the erection and construction of the auditorium except what has been hereinbefore described.

In May 1949 with the purpose of providing additional funds so that progress could be had in the construction of the auditorium a proposal for a new bond issue was submitted to and adopted and approved by the voters of the city. The proposal was insofar as pertinent here as follows:

"In addition to the power and authority elsewhere in this Charter provided, and in addition to the bonds heretofore authorized for such purpose, the City Council for the purpose of erecting a public building to be used as a city auditorium and equipping the same, is hereby authorized to borrow money and pledge the credit and property of the city upon its negotiable bonds in an amount not to exceed $1,500,000.00 without further consent of the voters * * *."

On these facts the plaintiffs allege substantially that it is the duty of the defendants to proceed with the construction of the auditorium on the site selected and purchased for that purpose.

Nevertheless they say that the defendant officials have failed to do so, that they contemplate action con-

trary thereto, and that unless otherwise directed by an adjudication they will submit a proposed amendment to the city charter which has been duly filed which in terms if adopted by a vote of the people and if declared to be legal, valid, and binding would nullify the provision of the present charter as amended making provision for the location of the auditorium, and would render for naught the outlay of expense for purchase of site, improvement of 15th Street, architect's fees, and the contract for the ice rink, contrary to law and equity and the rights of plaintiffs as taxpayers of the city of Lincoln.

The proposed amendment does not designate a location for the auditorium. It merely empowers the city council to select a location which shall not abut on 15th Street between K and R Streets. It simply excludes the area designated in the present amendments and the location already acquired by purchase.

The plaintiffs contend substantially that such an amendment would be void, a nullity, and illegal, and that under the facts and circumstances the defendants are estopped from holding or permitting an election the purport of which would be to repudiate the charter amendments and actions of the city council with reference to the location of the city auditorium. The facts and circumstances pleaded in this connection are: The authorization of the auditorium in 1939 was to build on 15th Street; the authorization in 1941 was to build on 15th Street and to improve 15th Street; the authorization to improve 15th Street was an integral part of and an adjunct to the construction of appropriate environs for the building of the 15th Street site; the city has levied taxes under the terms of the authorization requiring the building to be on 15th Street; the city has issued bonds and borrowed money containing covenants and representations that the said auditorium would be on 15th Street; the city has purchased property relying upon the authorization of the charter amendments

for the building of an auditorium and the improving of 15th Street; the city has brought condemnation suits against numerous property owners and has acquired and taken from them their property under the authorization to build an auditorium and improve 15th Street in conjunction therewith; from the levies and the bonds the city has spent $46,750 in acquiring a site for the said building; it has spent $270,250 in improving 15th Street as a part of the said general plan; it has spent $22,943.50 for architectural fees for plans for the construction of a building on the proposed site, which plans are totally useless in the event of a transfer of the building to any other site; and it has spent $2,000 as part payment for an ice rink. All of the foregoing was done prior to the submission of the charter amendment of 1949 which charter amendment provides that $1,500,000 of bonds shall be authorized in addition to the authorization previously made.

The foregoing is we think a fair reflection of the essential facts set forth by plaintiffs in their petition and of course it is these essential facts that the defendants by their demurrer say do not amount to a cause of action.

The substance of the grounds for demurrer to the petition are:

That the right of a city operating under a home rule charter to amend its charter is a constitutional right and when a petition sufficient for submission of an amendment is filed the courts have no jurisdiction to interfere with or prevent the holding of an election upon the proposed amendment.

That a city operating under a home rule charter with regard to the matter of voting on amendments of its charter is a legislative body and operates legislatively and the courts will not in advance of adoption of amendment pass upon the validity or constitutionality of a proposed amendment.

That a taxpayer may not enjoin an illegal election to save expense unless it be shown that he has a special

interest not enjoyed by the public at large which would be destroyed or irreparably damaged.

That no justiciable controversy is presented by the petition which would support a declaratory judgment.

That the people of a city operating under a home rule charter may not be estopped from changing, amending, or altering their charter.

Other objections are set forth but they either inhere in these or are refinements upon them, hence they will not be set forth separately.

In an approach to a consideration of the questions involved it appears well to point out that in a city operating under a home rule charter the charter is the fundamental law for the government of the city. It may contain or be made to contain by amendment anything relating to its government which is not violative or in conflict with the United States Constitution or the Constitution or laws of this state. Schroeder v. Zehrung, 108 Neb. 573, 188 N. W. 237; Consumers Coal Co. v. City of Lincoln, 109 Neb. 51, 189 N. W. 643; Standard Oil Co. v. City of Lincoln, 114 Neb. 243, 207 N. W. 172; State ex rel. City of Lincoln v. Johnson, 117 Neb. 301, 220 N. W. 273. It may not validly contain provisions in conflict with statutory provisions or questions of general or state-wide public interest or concern. Consumers Coal Co. v. City of Lincoln, *supra.*

The people of a city in the adoption or amendment of a home rule charter act legislatively. Consumers Coal Co. v. City of Lincoln, *supra.*

The significant difference between a city operating under a charter prescribed by the Legislature and one operating under a home rule charter is that while the two charters are legislative, in the former instance the legislative body is the state Legislature whereas in the latter it is the voters of the organized community itself. The power to act in each instance is constitutional but the action taken under the power is legislative. Consumers Coal Co. v. City of Lincoln, *supra.*

It is a general rule that the courts will not in advance of passage or adoption of legislation enjoin such legislation or inquire into the validity or constitutionality thereof. Lee v. City of McCook, 82 Neb. 26, 116 N. W. 955; Chicago, R. I. & P. Ry. Co. v. City of Lincoln, 85 Neb. 733, 124 N. W. 142; Leeman v. Vocelka, 149 Neb. 702, 32 N. W. 2d 274; Annotation, 140 A. L. R. 439.

It is also a general rule that the courts will not inquire into the validity or constitutionality of an election in advance or enjoin it at the suit of a taxpayer unless it be made to appear that the passage or enactment thereof would immediately destroy or irreparably damage special property rights or interests peculiar to the taxpayer and not enjoyed by the public at large. Lee v. City of McCook, *supra;* Davis v. County Commissioners, 153 Mass. 218, 26 N. E. 848, 11 L. R. A. 750; Dunn v. Board of Commissioners, 162 Kan. 254, 449, 177 P. 2d 207; Mann v. County Court, 58 W. Va. 651, 52 S. E. 776; Richardson v. Mayes (Tex. Civ. App.), 223 S. W. 546; 28 Am. Jur., Injunctions, § 163, p. 353.

To these general rules there are recognized exceptions. An exception is where the passage of the legislative act would be followed by some irreparable loss or injury beyond the power of redress by subsequent judicial proceedings. Solomon v. Fleming, 34 Neb. 40, 51 N. W. 304; Wabaska Electric Co. v. City of Wymore, 60 Neb. 199, 82 N. W. 626; Poppleton v. Moores, 62 Neb. 851, 88 N. W. 128, 67 Neb. 388, 93 N. W. 747; Chicago, R. I. & P. Ry. Co. v. City of Lincoln, *supra;* Munch v. Tusa, 140 Neb. 457, 300 N. W. 385.

Another is when it would cause a multiplicity of suits. Cases cited in support of the next preceding proposition apply to this one.

Another is when the acts and conduct of the corporation have been such as to estop it to assert the right to insistence upon the general rule. The authorities relative to this proposition are cited and discussed later herein.

Still another under the law of this jurisdiction is where by amendment to a home rule charter bonds for a project have been voted and directions given to the city council to acquire a site and to construct the project thereon without a further vote of the people, an election thereafter, the purpose whereof is to select a site the effect of which would be to defeat the prompt and successful completion of the project as directed by the previous vote of the people, may be enjoined. State ex rel. Ballantyne v. Leeman, 149 Neb. 847, 32 N. W. 2d 918.

It is not questioned that the petition which has been submitted to the city clerk is on its face sufficient for submission of the proposed amendment to a vote of the people of the city of Lincoln. Also it is not contended that the plaintiffs have interests which would be affected any differently than those of the public at large.

It follows then that the questions for primary determination are: Assuming that the proposed amendment, if adopted, would be an invalid exercise of power under the home rule charter, are the general rules with reference to such attacks or the exceptions thereto to be applied? Does the petition present a justiciable controversy? Is the controversy properly presentable under the Uniform Declaratory Judgments Act by these plaintiffs? Would the proposed amendment, if adopted, be an invalid exercise of power under the home rule charter and the facts as set forth in the petition?

There being no question about the general rules it appears only necessary to consider the exceptions. The first one to be considered is that of whether or not the adoption of the amendment would cause irreparable loss or injury beyond the powers of redress by subsequent judicial proceedings.

That this would be true according to the allegations of the petition there can be little doubt. The only tangible thing that the city would have left of value would be the real estate purchased, and this would

have no value for the purposes for which it was purchased. · It would have the street improvement, but this improvement would have no relation to the purpose for which the money was expended in the absence of. an auditorium on 15th Street. The funds expended for architect's fees would be a total loss. The funds expended on the ice rink contract would be a total loss. None of the funds could be recovered in subsequent legal proceedings, and none could be recovered otherwise except such as might be realized from the sale of the site acquired. The total of all funds expended would be irretrievably lost for the purposes for which they were raised and expended except possibly the amount invested in the site.

Whether or not a multiplicity of suits would ·flow from the adoption of the amendment is of course conjectural. The possibility does however confront. The possibility of an action to test the validity of such an amendment on the grounds on which plaintiffs herein seek to test it is not remote. Also it is not difficult to anticipate that the courts would be appealed to by taxpayers to determine whether or not the funds raised pursuant to the amendments of 1939, 1941, and 1949 could be expended for the acquisition of a site other than the one acquired and the construction ,of an auditorium thereon. Further it is not difficult to anticipate that if taxpayers did not bring such action the city itself might be under the necessity of instituting action to clarify this question in order to obtain a contract or contracts for construction dependent for payment out of funds raised pursuant to these amendments.

While it cannot be said with any degree of certainty that the failure to adjudicate the questions before the court would cause a multiplicity of suits, it can be said that an adjudication would avoid the possibility.

Under the theory of estoppel action may be had to test the validity of a proposed amendment before adoption thereof when a municipality acting under its

municipal capacity has gained a clear and decided advantage by the act or acts relied upon. In such case equity will prevent it from retaining the advantage and at the same time denying its binding force and effect. Philadelphia Mortgage & Trust Co. v. City of Omaha, 63 Neb. 280, 88 N. W. 523, 93 Am. S. R. 442, 57 L. R. A. 150; State ex rel. Cox v. McIlravy, 105 Neb. 651, 181 N. W. 554; City of Grand Island v. Willis, 142 Neb. 686, 7 N. W. 2d 457; May v. City of Kearney, 145 Neb. 475, 17 N. W. 2d 448; Mitchell v. Brown, 18 N. H. 315; Sawyer v. Manchester & Keene R. R. & Tr., 62 N. H. 135, 13 Am. S. R. 541; Benjamin v. District Township of Malaka, 50 Iowa 648; Kirchner v. Board of Directors, 141 Iowa 43, 118 N. W. 51; People ex rel. Osborn v. Board of Trustees, 119 Misc. 357, 196 N. Y. S. 459; City of Hudson v. Board of Education, 158 Misc. 583, 287 N. Y. S. 620; Independent School District No. 68 v. Rosenow, 185 Minn. 261, 240 N. W. 649, 79 A. L. R. 434; Consolidated School District No. 2 v. Cooper (Mo. App.), 28 S. W. 2d 384; Marks v. Richmond County, 165 Ga. 316, 140 S. E. 880.

None of the cases cited bear directly upon the question of the amendment to the home rule charter of a city. They do however point out very definitely that, where a political subdivision has by vote of the people given to the governing body a power and a mandate, and has implemented the power and mandate by authorization of bond issues and collection of taxes, and pursuant to such authorization and mandate steps have been taken to effect the purposes contemplated, the question of whether or not a subsequent election may be held, the purpose of which is to effect a change in the authorization and mandate, is a matter for judicial inquiry and interpretation.

The fourth exception to the general rule noted herein contains something more than an exception. It contains also a declaration of substantive right and legislative power. It declares that once power has been ex-

tended as it has been in instances such as this one and the power has been exercised to the extent of directing the city to issue bonds and to select a site the matter of selection of a site is no longer a subject of referendum and that a referendum election may be enjoined. State ex rel. Ballantyne v. Leeman, *supra*.

It is true that the action there was directed at a proposed referendum upon a city ordinance and not an election upon a proposed charter amendment, but in view of the expression of the court in that opinion this does not appear to be of controlling importance. The ground of the determination was that after the power of selection was conferred on the city council the matter of selection became an executive function and not legislative and could not be interfered with by a further vote of the people of the city. In the opinion it was said:

"It is now contended that this first act of the council in starting to acquire a site therefor must be submitted to a referendum vote as a legislative act. Could not the same argument be used later and another referendum demanded on the letting of the contract for the erection of the building?

"To permit a referendum on each of the various steps in carrying out a definite mandate of the voters to secure a site and build a city auditorium would delay executive conduct of the council and defeat the prompt and successful completion of the city auditorium as directed by vote of the people at the special election held for that purpose."

Again assuming that this amendment would be invalid if adopted we conclude that under the exceptions to the general rule the questions presented by the petition are proper for consideration at this time, that is, before submission of the proposed amendment to a vote of the people.

This determination disposes of the question of whether or not a justiciable issue is presented by the petition.

Whether or not this justiciable issue will support a declaratory judgment will be considered later herein.

To this point we have considered the question as to whether or not the petition presents questions proper for determination in a judicial proceeding at this time and having decided that it does attention is now directed to the question of whether or not the facts pleaded entitle the plaintiffs to the relief sought or some of it. The proper determination in this respect we conclude flows from the pronouncements made in the decisions already cited herein.

The case of State ex rel. Ballantyne v. Leeman, *supra*, was one wherein by amendment to the home rule charter of the city of Omaha the city council was authorized to issue bonds for the construction of a city auditorium and to select a site therefor. The council proceeded by proposed ordinance to select a site. A referendum was sought upon the ordinance. The right to injunction against the election was sustained. The right was sustained, as has been pointed out, on the ground that an election would be an interference with executive power and authority and not the exercise, under the facts, of a legislative right.

In the case at bar the authority to issue bonds and to levy taxes has been given as was also authority to select a site. In addition, pursuant to that authority, large expenditures of money were made and a site selected and purchased.

As has already been pointed out if the auditorium is not to be built on the site there will be an irreparable loss for which redress cannot be had in judicial proceedings or otherwise and this loss will fall in proportion to their assessable property on all of the taxpayers of the city of Lincoln.

Again as already pointed out there can be no certainty as to whether or not there would be a multiplicity of suits if this proposed amendment were adopted. The

potential and the possibility thereof certainly would with good reason threaten.

As to estoppel numerous decisions point to principles the effect of which is to say that situations such as this will give rise to an estoppel to hold such an election under circumstances such as are disclosed here.

In Philadelphia Mortgage & Trust Co. v. City of Omaha, *supra,* it was said:

"The correct rule, therefore, is, and should be, that the doctrine can be appealed to effectively, as against a municipal corporation, only when it is acting in its private as contradistinguished from its public or governmental capacity. There may be and probably are exceptions to the rule stated, as when a municipality has gained a clear and decided advantage by the act relied on to operate as an estoppel, then equity will prevent it from retaining the advantage, and at the same time deny its binding force."

The case of Mitchell v. Brown, *supra,* was one where the right of a school district to reconsider by vote action which had previously been taken to raise funds by taxation was brought into question. In the opinion it was said in part: "The selectmen were, therefore, bound to assess the tax. It was legally assessed, committed to the collector, with a warrant for its collection, and he had actually commenced the collection of it before the district, at a subsequent meeting, undertook to reconsider its previous action.

"It is clear, that, after all this had been done, it was not in the power of the district, by a reconsideration, to render nugatory the previous vote."

In Sawyer v. Railroad, *supra,* it was said: "At any time before the rights of third persons have attached, a town may rescind its votes, or the record thereof, if erroneous, may be amended in accordance with the facts; but votes cannot be rescinded to the prejudice of rights which have accrued under them."

In Benjamin v. District Township of Malaka, *supra,* a

school district case, it was said: "After the tax had been collected and this action commenced, the electors, at the annual meeting in 1878, rescinded their previous action in relation to the erection and appropriation for the house in question. By the payment of the taxes levied and collected for the purpose of erecting the house, the plaintiff's right thereto became vested, and no subsequent action of the electors, without his consent, could have the effect of depriving him of such right."

To the same effect is Kirchner v. Board of Directors, *supra*.

In Barclay v. School Township, 157 Iowa 181, 138 N. W. 395, the two earlier cases are criticised in certain respects. The holding with reference to estoppel was not criticised. The effect of the criticism was to say that the court in those cases erred in holding that the rights considered were vested as distinguished from mere rights.

In People ex rel. Osborn v. Board of Trustees, *supra*, which was a case wherein there had been an election for the purpose of raising funds for the construction of a road, it was said: "In addition to the reasons specified above, it would seem that the appropriation of the moneys for a purpose other than that for which it was raised would be an illegal and improper diversion of said fund."

In City of Hudson v. Board of Education, *supra*, a case not similar in point of fact but involving principles pertinent to this inquiry, it was said: "It is well settled 'that where substantial expenditures have been made on the strength of an ordinance or franchise, the municipality may be estopped to deny its validity, if not clearly ultra vires.'"

In Independent School District No. 68 v. Rosenow, *supra*, a school district case, it was said: "We hold therefore that the voters of a school district may, in properly called meeting, rescind the action taken at an earlier election authorizing a bond issue; provided of course that the bonds have not been issued in such fashion as to

bind the district contractually and beyond its power to withdraw. Had the proposed bond issue now under consideration gone that far, doubtless an injunction against the holding of an election to rescind the authority therefor would have been inescapable."

In Consoldiated School District No. 2 v. Cooper, *supra,* it was said: "As a usual thing, the doctrine of equitable estoppel cannot be invoked against a municipal or public corporation as to the exercise of governmental functions, but yet exceptions are to be made, and where right and justice demand it, the doctrine will be held to apply, * * *."

In Marks v. Richmond County, *supra,* a case involving the vote of a bond issue for paving and construction of specified highways, it was said: "Funds raised by a bond issue for a specific purpose by popular vote can not be diverted to any other purpose whatsoever. They constitute trust funds to be used only for the purpose for which the bonds were voted. * * * The voters might not have voted for this large issue of bonds, if the roads on which the proceeds of the bond issue were to be spent were not then in existence, and if such roads were in the future to be established and located by the county authorities or the State Highway Board. Good faith with the voters requires that these funds should be used in paving State-aid roads which had been designated at the time of the passage of this resolution and which were in existence at the date of the election."

The conclusion arrived at, therefore, on the facts as set forth in the petition and under the noted exceptions to the rules that the courts will not in advance of passage or adoption of legislation enjoin or inquire into the validity or constitutionality thereof, is that a situation has been presented which calls for a judicial declaration that the holding of the contemplated election would be invalid, and that an injunction to restrain the holding of such election is proper. On the same basis it is concluded that the city council should be declared to be under a

duty and obligation to proceed with the construction of an auditorium pursuant to the named amendments to the city charter now in existence and on the site which has been procured for that purpose.

Whether or not the facts will support a judgment under the Uniform Declaratory Judgments Act is dependent upon two considerations. The first is as to whether or not the parties plaintiff may bring the action, and the second is as to whether or not there is an actual controversy between the plaintiffs and the defendants.

As to the former there can be little doubt. A resident taxpayer without showing any other interest may maintain an action to enjoin the improper disposition of public funds raised by taxation to prevent the creation of an invalid obligation. Tukey v. City of Omaha, 54 Neb. 370, 74 N. W. 613, 69 Am. S. R. 711; Woodruff v. Welton, 70 Neb. 665, 97 N. W. 1037; Fischer v. Marsh, 113 Neb. 153, 202 N. W. 422; Neumann v. Knox, 115 Neb. 679, 214 N. W. 290; May v. City of Kearney, *supra*.

As to the latter where there is an actual controversy, recognizable as such under law, between the officials of a municipality and its taxpayers concerning the rights over the disposition of public funds and of property belonging to the municipality declaratory judgment proceedings are proper for the determination of the legal rights involved. § 25-21,150, R. R. S. 1943; City of Lincoln v. First Nat. Bank, 146 Neb. 221, 19 N. W. 2d 156; Reid v. City of Omaha, 150 Neb. 286, 34 N. W. 2d 375.

It is concluded under this authority and the conclusions arrived at herein with reference to the subject matter of the action that the issues presented are sufficient to support a declaratory judgment.

For the reasons herein set forth the decree of the district court denominated journal entry is reversed and the cause remanded with directions to enter a decree in accordance herewith.

REVERSED AND REMANDED WITH DIRECTIONS.