CHARLES G. HELMING ET AL., APPELLEES, V. EMIL O. FORRESTER ET AL., APPELLANTS.

FILED NOVEMBER 1, 1912.    No. 17,372.

1. **Ejectment: PARTIES.** Where parties entitled to the possession of land, in arranging for the commencement of an action to recover such possession, execute to their attorneys a quitclaim deed to an undivided half of such land under an agreement that such deed is to be held as security only for the services to be rendered by such attorneys in their behalf, such deed is in effect a mortgage, and does not render it necessary to join the grantees therein named as plaintiffs in such action.

2. **Appeal: LAW OF THE CASE.** "The decision of questions presented to this court in reviewing the proceedings of the district court becomes the law of the case, and, for the purposes of the litigation, settles conclusively the points adjudicated." *Anheuser-Busch Brewing Ass'n v. Hier*, 61 Neb. 582.

3. **Trial: DIRECTING VERDICT.** In the trial of an action in ejectment, where the undisputed evidence clearly establishes the right of possession to be in one of the parties to such action, it is not error for the court to direct the verdict.

4. ———: **INSTRUCTION.** The instruction given by the trial court examined, and *held* to have properly submitted to the jury the only controverted question of fact in the case.

APPEAL from the district court for Dawson county: HANSON M. GRIMES, JUDGE. *Affirmed.*

*E. A. Cook,* for appellants.

*Douglas Deremore, F. J. Mack, Edwin Vail* and *C. E. Spear, contra.*

FAWCETT, J.

This case was advanced under our rules; it being its second appearance in this court. Our former opinion will be found reported in 87 Neb. 438. The facts are therein stated, and need not be repeated here. After the case was remanded, the petition was amended by adding the averment, "that said plaintiffs have a legal estate in and are entitled to the possession of said described premises, and said defendants since the 25th day of December, 1901, have unlawfully kept, and still unlawfully keep, the plaintiffs out of the possession of said premises." A jury was impaneled, and the trial proceeded upon the theory that it was an action in ejectment.

The interest of Minnie C. Helming and of her heirs, defendants herein, the void character of the decree of the county court, the right of the plaintiffs to prosecute the action for possession, and the defense of the statute of limitations are all disposed of by our former opinion, which is now the law of the case. The only questions presented here, which were not disposed of there, are: (1) The plea of a defect of parties plaintiff. (2) Did the district court err in declining to submit to the jury more than the single question as to the value of the rents and profits of the land in dispute for the years 1905 to 1908, inclusive?

The contention that there is a defect of parties plaintiff is based upon the fact that about two months prior to the commencement of the action the plaintiffs executed to their attorneys a quitclaim deed to an undivided one-half of the land in controversy. The uncontradicted evidence is that the deed was made and delivered as security only for the services to be rendered by counsel under their contract of employment. The deed was in effect a mortgage, and it was not necessary to join the grantees therein named as plaintiffs.

The evidence being undisputed that the only interest defendants have in the land is as the surviving husband

and son of Minnie C. Helming, deceased, who was the surviving spouse of William F. Helming, deceased, in whom the title and ownership of the property was vested at the time of his death, and that the plaintiffs are the heirs at law of the said William F. Helming, the right of possession of the plaintiffs was so conclusively established that there was nothing upon that point to submit to the jury. In the trial of an action in ejectment, where the undisputed evidence clearly establishes the right of possession to be in one of the parties to such action, it is not error for the court to direct the verdict.

The judgment of the district court being in harmony with our former opinion, and being fully sustained by the evidence, it is

AFFIRMED.

HAMER, J., concurring in conclusion, and dissenting as to reasons given.

As stated in the main opinion, our former opinion is reported in 87 Neb. 438, and it would not be necessary to write this opinion if it were not for the fact, as the writer conceives, that material matter is left out of the main opinion. It is stated in the first opinion that William F. Helming died intestate December 5, 1889, without issue, leaving a widow, Minnie C. Helming; that his mother, Charlotte Helming, and his brothers, Charles G. Helming and Otto B. Helming, and his sister, Minnie Sill, were his only heirs; that his mother died soon thereafter, and that her interest descended to the brothers and the sister above mentioned, who were the plaintiffs in the action brought in the district court; that the widow made application to the county court under the provisions of chapter 57, laws 1889, known as the "Baker Decedent Law," to have the homestead assigned to her; that action was taken by said court setting aside and assigning to her the homestead of the deceased, consisting of 160 acres of land; that she afterwards married Emil O. Forrester, and thereafter died leaving the defendant, Paul Forrester, a

minor, as the sole issue of that marriage; that during coverture Minnie C. Helming Forrester and her husband executed a mortgage on the premises to one Leflang, which mortgage was afterwards assigned by said Leflang to said Emil O. Forrester; that the mortgage and assignment appear on the records of said 'Dawson county; that the said Minnie C. Helming Forrester and the defendants have held possession of the premises ever since the death of William F. Helming; that the plaintiffs brought their action alleging that they were the heirs of William F. Helming and the owners in fee of the premises, and that the proceedings by which the county court attempted to assign the title in fee to Mrs. Helming were void; that they prayed that the cloud upon the title created by the decree and the mortgage and assignment might be set aside for an accounting of the money paid by the defendants for the benefit of the estate, and for the rents and profits received, and for the possession of the premises; that the answer pleaded the decree of the county court, the passage of the curative act of April 9, 1895, the payment of certain mortgage indebtedness upon the land in reliance upon the title of Minnie C. Helming, and title by adverse possession ever since the entry of the decree in 1890, and defendants prayed that their title be quieted and for general equitable relief; that the reply alleged that the curative act was void, being in violation of the constitution of the state, and denied the other allegations in the answer; that upon the trial in the district court the court found that the defendants and Mrs. Helming had been in the adverse possession of the land since the 20th day of March, 1890; that since the date of the decree in the county court no right of plaintiffs in the real estate had been admitted or recognized by Mrs. Forrester or the defendants, and that the decree quieted the title in the defendants.

The material matter left out of the main opinion is that after the case was remanded by this court to the district court for Dawson county, and there was an amendment thereafter made to the petition by adding the averment,

"that said plaintiffs have a legal estate in and are entitled to the possession of said described premises, and said defendants since the 25th day of December, 1901, have unlawfully kept * * * the plaintiffs out of the possession of said premises;" that the judgment rendered was upon this new state of facts, and therefore the further statement contained in the second paragraph of the syllabus of the present main opinion that "the decision of questions presented to this court in reviewing the proceedings of the district court becomes the law of the case, and, for the purposes of the litigation, settles conclusively the points adjudicated," was wholly inapplicable. The old adjudication could not adjudicate a new set of facts. As the prayer to the first petition was set aside the cloud upon the title created by the decree and the mortgage and the assignment thereof, and for an accounting of the money paid by defendants for the benefit of the estate, and for the rents and profits received, and for which the plaintiffs would in equity be liable, and to enter a judgment in conformity with such findings, and the prayer of the defendants was that their title be quieted, and for general equitable relief, the case then made was one in equity to quiet title, and the amendment thereafter made was for "an execution for the delivery of the possession of said premises, and costs," and changed the nature of the case to a law action.

In the present case the defendants' answers were in effect general denials and a plea of defective parties plaintiff, and the case was tried before a jury, and proceeded apparently upon the theory that it was an action in ejectment, although it had formerly proceeded as an action to quiet title. The defendants requested an instruction submitting the ownership of the land to the jury, but the instruction was refused. The court submitted to the jury but one instruction, which was to find the value of the rents and profits of the land in dispute for the years 1905, 1906, 1907, 1908. There was a finding by the jury under the direction of the court that the

plaintiffs were entitled to and should recover possession of the land, and there was also a finding that the plaintiffs should recover $600 for rents and profits. There was a judgment on the verdict for the plaintiffs. It will be seen that the action was treated by the parties and by the court as one in ejectment. The judgment rendered is a judgment in ejectment. The main opinion is also inadvertently without a statement that the original case, upon which the former opinion of this court was founded, proceeded as an action to quiet title, while the second case after the amendment was made, and touching which the present opinion was rendered, proceeded as an action for the possession of real property.

It is contended by the defendants that it is not a question whether this court held the decree of the county court to be void, but did Mrs. Helming assert rights under the decree of the county court which were recognized by the district court, however erroneously, and of which facts the plaintiffs, or part of them, had notice at that time. It is contended by the defendants that the statute of limitations would begin to run from that time, and that, if Mrs. Helming asserted her rights by reason of the decree, her adverse possession would begin at that date, not because of the decree, but *because of the assertion of the right.* It is also contended by the defendants that the second fact which enters into their case is the transfer by the plaintiffs to two of their attorneys of one-half of the land in controversy by quitclaim deed, and before the suit was originally commenced. This seems to be the only contention of the defendants answered by the main opinion. Defendants also contend that the amended pleadings have so changed the issues from what they were at the first trial that the defendants are in no manner bound by the opinion of the court touching the former trial. They earnestly contend that title to the land is in the defendants by adverse possession.

It is contended by the defendants that the petition and answer necessary to a decree in the district court should

have been admitted in evidence. They were offered by
the defendants, and their admission was denied by the
trial court. It is claimed that they were competent evi-
dence because they showed an assertion of absolute title
to the land in controversy by said Minnie C. Helming
under the said decree. It is claimed that by the proceed-
ings of the district court direct knowledge was brought
home to the plaintiffs that Minnie C. Helming was not
claiming simply a life estate in the land, but that she was
claiming an *absolute title* in fee. It is contended by the
defendants that, from the time Mrs. Helming filed her
answer in the district court in the case brought by Charles
G. Helming for an order to sell the real estate to pay
debts, the plaintiffs knew that she was holding the land
claiming to be the owner in fee, and that this was suffi-
cient to support the running of the statute of limitations
in her favor, except the one concerning the quitclaim deed
to counsel Derremore and Mack. These contentions of the
defendants do not seem to be answered in the main opin-
ion. There is seemingly a mistake in suggesting that they
were adjudicated in the former case, because, for the rea-
sons stated, they would not have been adjudicated. Our
court has held that the statute of limitations begins to
run as to the right to quiet title as soon as an action might
be brought for that purpose; that such action may be
brought before the expiration of a life estate and as soon
as the right accrues to the remainderman. It is perhaps
confusing that there should be such a distinction between
the time when the statute begins to run as to the right to
quiet title and when it begins to run as to the right to
acquire possession. Whether this should be may be de-
batable. It is clear that the rule laid down by this court
provides a time when the statute begins to run as to the
right to quiet title, and still a different time when it
begins to run as to the right to recover possession, but in
each case dependent upon the time when the right ac-
crues. In the instant case it is the opinion of the ma-
jority of the court that the statute did not begin to run

as to the right to recover possession until Minnie C. Helming died, when her life estate was extinguished. It may be contended with a degree of plausibility and force that as soon as Minnie C. Helming claimed title as against Charles G. Helming, who was trying to sell the land as an administrator, and claimed that she was the owner of the property, and that she had acquired it by decree of the county court under the Baker decedent act, and that the district court had ratified her claim, that then, because of these things, the statute of limitations should begin to run.

It is claimed that the principle announced in *Hobson v. Huxtable,* 79 Neb. 334, and on rehearing, 79 Neb. 340, should determine this case. That case involved the consideration of a petition, pleadings and evidence, showing that one Annie E. Hobson died August 17, 1888, intestate, leaving her surviving husband, John H. Hobson, and her children, John J., aged 1 year, Roy J., aged 7 years, Ida Belle, aged 14 years, and George W., aged 18 years; that at the time of her death she was "seized" of a quarter section of land upon which she had resided with her husband and family for several years preceding her death; that the land did not exceed in value, over and above incumbrances, $2,000, and constituted the family homestead, if occupying it as a family residence was a sufficient selection under the homestead law; that on October 27, 1888, one Palmer was appointed as administrator of the estate of the deceased, and in May filed his petition under the statute for license to sell lands to pay debts; that such license was granted by the district court, and the premises were sold October 24, 1890, to one Charles Huxtable, a defendant, and the sale was confirmed, and the administrator conveyed the premises to the purchaser, who went into possession under his deed, and that his wife remained in actual possession until the final judgment of the court; and the prayer of the petition was for a decree declaring the administrator's deed to be void. The defendants Ida Belle and George W. Hobson filed an answer

admitting the allegations of the petition, the death of
John H. Hobson, and asserting title in themselves, and
asking that their rights be investigated, and that the
defendants Huxtable be ejected from the premises.
Against these defendants Hobson there was a plea of the
statute of limitations by the defendants Huxtable. There
was a decree in the district court quieting title in the
four Hobsons, subject to the lien of a mortgage which had
been paid by the money received from the purchaser at
the administrator's sale. The Huxtables appealed. They
contended that the use of the property as a family home
was insufficient to show that the homestead was selected
with the consent of the wife, and as to the defendants Ida
Belle Hobson and George W. Hobson it was contended
by the Huxtables that more than ten years had elapsed
since they became of age, and that therefore they were
barred by the statute of limitations. This court held
that it would be presumed from the use of the property
as a homestead that the wife consented to such use, and
held that upon the death of the wife the homestead de-
scended to the husband during his life, and upon his death
in fee to the children, and that the license of the adminis-
trator was void, though the proceedings were regular. It
was held that section 57, ch. 73, Comp. St. 1905, provides
"that an action may be brought and prosecuted to final
decree, judgment or order, by any person or persons,
whether in actual possession or not, claiming title to real
estate against any person or persons who claim an ad-
verse estate or interest therein, for the purpose of deter-
mining such estate or interest, and quieting the title to said
real estate," while section 59 contains the further pro-
vision that "any person or persons having an interest, re-
mainder, or reversion in real estate shall be entitled to
all the rights and benefits of this act." It was contended
by the attorney for the defendants Ida Belle Hobson and
George W. Hobson that the claim set up in their answer
was to be considered as an action in the nature of eject-
ment, and that such an action could not accrue to them

during the life of John H. Hobson, the life tenant. The defendants Huxtable contended that since the Huxtables did not claim under John H. Hobson, and could not claim to be the owners of his interest for life, an action by the heirs to obtain possession could have been as well maintained before as after his death. In the first opinion this court say: "We are, however, unable to regard this suit as an action in the nature of ejectment. The plaintiff's suit was to quiet title, and, if we admit this claim of the defendants Ida Belle and George W., we are committed to the anomalous proposition that two tenants in common can join in an action which shall be on the part of one *an action to quiet title,* and on the part of the other *an action in ejectment.*" This court then further say in the first opinion that the two actions are incompatible, that they require different methods of trial and a different judgment at the end of the trial. In the first opinion, at considerable length, the court emphasizes the *impossibility* of joining two such diverse actions, but in the second opinion, delivered on the rehearing, this court said that if a remainderman, not being under disability, failed for ten years after his cause of action accrued to commence his suit, then he would be barred by the statute of limitations from maintaining his action to quiet title, and that, if the remainderman should be under a legal disability when the cause of action accrued, the statute would not commence to run against him until the disability was removed, and the court held: "The remainderman's estate in the homestead will not support an action in ejectment during the lifetime of the life tenant, and the statute of limitations will not commence to run against that possessory action until the demise of the surviving spouse." In the seventh paragraph of the syllabus in the second opinion this court announced the doctrine: "In an equitable action to set aside a deed, where the right of possession is in issue and depends upon principles of equity that must necessarily be determined by the court, it is the duty of the court to determine the right of possession,

if all parties in interest are before the court, and put the parties entitled thereto into possession." Now, in that case it was not the petition which demanded possession. That seems to have demanded that a deed be declared void, but the defendants Ida Belle Hobson and George W. Hobson in their answer and cross-petition prayed the court to put them in possession. They were in court alleging facts which entitled them to bring ejectment, and they insisted that the court should render a judgment putting them in possession. By the first opinion in the case they were denied the claim which they made and which had been granted them in the district court, and a judgment of the district court was reversed as to them and their action dismissed; the court remarking: "It is a practical as well as a legal impossibility to join two such diverse actions." In the second opinion no such difficulty was encountered, and the opinion was unanimous. The writer of the former opinion concurred in the opinion upon the rehearing. In the latter opinion it was said that more than ten years intervened between the majority of the defendants Ida Belle and George W. Hobson on the one hand, and the commencement of the action on the other, and therefore that the statute of limitations barred the action of the said defendants Hobson to quiet their title to the real estate involved (*First Nat. Bank v. Pilger*, 78 Neb. 168; *Holmes v. Mason*, 80 Neb. 448), and therefore that the district court erred in quieting their title to the said real estate; but, as they were before the court demanding the possession of their part of the land, the only relief they were entitled to, and the court had the right to award that possession, it would do so (*Albin v. Parmelee*, 70 Neb. 746); that all the allegations in the petition were admitted in the answer and cross-petition; that the claim was made by the cross-petitioners that they were entitled to the immediate possession of the land, and that they were kept out of that possession by their co-defendants, the Huxtables, and asking judgment ejecting the Huxtables; that the allegations of the petition and

cross-petition were to be considered together, and that, so considering them, the defendants Huxtable were advised of the nature and extent of the claim made by the Hobson heirs, both plaintiffs and defendants; that the plaintiffs prayed for equitable relief and possession, and the defendant heirs for possession only, and that the court would read the petition and cross-petition together, and the allegations of the first pleading might be considered to aid the lack thereof in the other. *Railway Officials & Employees Accident Ass'n v. Drummond,* 56 Neb. 235. The former opinion in this court was vacated and also the decree of the district court, and a decree was entered in this court and in conformity with the opinion rendered upon the rehearing.

Minnie C. Helming died in December, 1901, and until that event an action in ejectment could not be maintained to recover possession of the premises because she had her life estate therein as the surviving spouse of William F. Helming. As the right of any plaintiff to maintain an action for the possession of said premises could not accrue until that time, the statute of limitations did not begin to run until that time was reached. The petition in this case was filed June 25, 1908, and the amendment thereto containing the allegation concerning the plaintiffs' alleged possessory right to the premises was made by leave of the court February 28, 1911. It will therefore be seen that the ten years required for a bar against the plaintiffs' action had not expired at the time of the amendment to the petition, and the action was therefore well within the time. Under the rule in *Hobson v. Huxtable, supra,* the cause of action for the possession of the property having been brought within ten years from the termination of the life estate, it was not barred.

But, in the opinion of the writer, it is not a question of whether Mrs. Minnie C. Helming had a good title by reason of the proceedings in the county court, and by reason of the proceedings in the district court in which Charles G. Helming was prevented from obtaining a

license to sell the homestead for the payment of alleged debts against the estate. If Mrs. Helming asserted that she was the owner of the property and claimed the property by a title ever so inadequate, the statute of limitations ought to have begun running at that time, and in that event her heirs would be the owners of the property. It may be argued that, as her claim was based upon an insufficient and unauthorized proceeding, therefore everybody would take notice that she had nothing. But she did have *possession, and she was claiming the title.* As this court has construed the law in *Hobson v. Huxtable, supra,* no action for possession could be brought against Mrs. Helming as long as her life estate continued, and therefore no action could be brought for the possession of the premises. That is undoubtedly the law; but that is still not an answer to the question as to whether Mrs. Helming had no right to claim possession by reason of an inadequate and insufficient title, and, if she did exercise such a right, whether the statute would not then begin to run. There is danger that this court may have confused the existence of an actual legal right with the right of an unfounded claim of possession. Mrs. Helming forfeited nothing by reason of making her unfounded claim. The lawful claim of possession may originate in an unauthorized possession which cannot be legally defended. The running of the statute of limitations determines the right, and not the legality of the claim.

At the trial of the instant case, Charles G. Helming testified, as shown by the abstract, that "on January 4, 1908, myself, my brother and sister made a deed for an undivided one-half interest in this land to Douglas Dere-more and Fred J. Mack. We made the deed as a guaranty for the attorneys' pay in this suit and a previous one. We executed and delivered the deed to them to secure the attorneys for their pay in this case; I will say in the previous case and all cases, all cases that might come up concerning this land." This testimony is not disputed in any way. It appears to be a fact that a quitclaim deed was

made to secure the attorneys their fee. This deed was made to secure the attorneys their fee in case they succeeded in winning the suit. Unless the defendants have in some way been misled to their prejudice by the quitclaim deed to Deremore and Mack, it is difficult to understand why they have any legal or moral right to shelter themselves behind the technical alleged rule which would forbid inquiry concerning what the deed actually was as between the parties and the purpose for which it was made. In *Stall v. Jones*, 47 Neb. 706, this court held: "In this state a deed absolute in form passes the legal title, although intended as security for a debt, and for most purposes treated as a mortgage." In the opinion it is said: "But in this state a deed absolute in form, although intended as security, and in general treated as a mortgage, passes the legal title to the mortgagee"—citing *Gallagher v. Giddings*, 33 Neb. 222, and *Harrington v. Birdsall*, 38 Neb. 176. But in these the question was not raised, as it is raised in this case, simply as a bar to prevent the assertion of a right otherwise considered as well founded in law and equity. In this same case of *Stall v. Jones*, Commissioner IRVINE, delivering the opinion of this court, cited *Shubert v. Stanley*, 52 Ind. 46, *Trull v. Skinner*, 17 Pick. (Mass.) 213, and *Carpenter v. Carpenter*, 70 Ill. 457, to show that, when the mortgagor voluntarily surrenders the defeasance or abandons the payment of the debt, the conveyance *then* becomes absolute and vests complete title in the mortgagee. In *Gallagher v. Giddings, supra*, there was neglect by plaintiff, after a decree in his favor permitting redemption, to pay the money due, and thereupon the petition was dismissed. It will be seen that in all these cases there is *something to be done before* the title of the mortgagee becomes absolute. Section 10855, Ann. St. 1911, reads: "In the absence of stipulations to the contrary, the mortgagor of real estate retains the legal title and right of possession thereof." The quitclaim deed given in the instant case was treated by the parties to it as a mortgage, and was so intended by them. We know

of no reason why the defendants should be allowed to have it considered as an absolute conveyance, contrary to the intention of the parties to it.    Section 29 of the code provides: "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided in section 32."    The plaintiffs are the real parties in interest, and therefore have the right to prosecute the case.

I dissent from the second paragraph of the syllabus because the same is not applicable to this case.    When the former opinion was delivered, the issues under the pleadings were not the same as they are in the instant case.

I dissent as to the time when the statute of limitations should begin to run under the possession and claim of right to possession by Mrs. Helming, but under the rule laid down in *Hobson v. Huxtable, supra,* reluctantly concur in the judgment of affirmance which will have to be rendered.