MYRON D. NOBLE ET AL., APPELLANTS, V. THE CITY OF
LINCOLN ET AL., APPELLEES, CHARLES M. SUTHERLAND
ET AL., INTERVENERS-APPELLEES.

63 N. W. 2d 475

Filed March 26, 1954.   No. 33490.

*Davis, Healey, Davies & Wilson* and *Robert A. Barlow, Jr.*, for appellants.

*John H. Comstock* and *Jack M. Pace*, for appellees.

*H. B. Muffly*, for interveners-appellees.

*Clinton J. Campbell*, amicus curiae.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This case was brought by appellants to have judicially declared the rights and obligations of the mayor and city council of Lincoln, a home rule charter city, under certain existing charter amendments; to have declared the duty and obligation of the appellees to proceed with the construction of a city auditorium in accordance with plans made and steps taken under the terms of the charter amendments; to enjoin appellees from holding an election to ascertain whether or not the amendments referred to above should be changed so as to nullify cer-

tain provisions thereof under and by virtue of which large expenditures of money had been made and require the location of any auditorium building constructed on a site other and different than the one acquired by virtue of the authority of the existing charter amendments; and for a mandatory injunction requiring appellees to construct the auditorium on the site which had been acquired for that purpose. Appellees interposed a general demurrer to the petition of appellants in the district court. It was sustained and the case was dismissed. The first appeal was from that action of the district court. The record presented on that appeal is sufficiently recited in the opinion and a detailed statement of the matters before the court will be omitted from this opinion. Noble v. City of Lincoln, 153 Neb. 79, 43 N. W. 2d 578. The defendants in the trial court are referred to above and hereinafter as appellees.

Appellees argued in this court that the right of a city with a home rule charter to amend it is a substantial right and when a petition sufficient for submission of an amendment to the charter is filed with the city the courts have no authority to interfere with or prevent the holding of an election upon the proposed amendment; that a city of that character in the matter of the voting on an amendment to its charter is a legislative body and it acts legislatively; that the courts will not, prior to the adoption of an amendment, consider or determine the constitutionality of a proposed amendment; and that the electors of such a city may not be estopped from amending its charter. This court recognized and stated the general rules that courts will not, before passage of legislation, enjoin it or consider its validity or constitutionality and that courts will not inquire into the legality or constitutionality of an election before it is held or restrain it at the suit of a taxpayer unless it is established that the adoption of the proposal intended to be voted on would immediately destroy or irreparably damage special property rights or interests peculiar to the taxpayer and not

enjoyed by the public at large. This court also stated and discussed what were termed recognized exceptions to the general rules, to wit: Where the passage of the legislative act would be followed by some irreparable loss or injury beyond the power of redress by subsequent judicial proceedings, when it would cause a multiplicity of suits, when the acts or conduct of the corporation have been such as to estop it to assert the right to application and operation of the general rules, and that in this jurisdiction where by amendment to a home rule charter bonds for the project have been voted and directions given to the city council to acquire a site and to construct the project thereon without a further vote of the people, an election thereafter the purpose whereof is to select a site the effect of which would be to defeat the prompt and successful completion of the project as directed by the previous vote of the people may be enjoined.

The language of the court concerning the applicability of the first exception to this case is: "That this would be true according to the allegations of the petition there can be little doubt. * * * The total of all funds expended would be irretrievably lost for the purposes for which they were raised and expended except possibly the amount invested in the site." The statement of the court concerning the third exception noted is: "Under the theory of estoppel action may be had to test the validity of a proposed amendment before adoption thereof when a municipality acting under its municipal capacity has gained a clear and decided advantage by the act or acts relied upon. In such case equity will prevent it from retaining the advantage and at the same time denying its binding force and effect." The court characterized the fourth exception to the general rule as something more than an exception: "It contains also a declaration of substantive right and legislative power. It declares that once power has been extended as it has been in instances such as this one and the power has

been exercised to the extent of directing the city to issue bonds and to select a site the matter of selection of a site is no longer a subject of referendum and that a referendum election may be enjoined. State ex rel. Ballantyne v. Leeman, *supra.* * * * It is true that the action there was directed at a proposed referendum upon a city ordinance and not an election upon a proposed charter amendment, but in view of the expression of the court in that opinion this does not appear to be of controlling importance." The court concluded that the record presented questions proper for determination in a judicial proceeding and expressed its conclusion in this regard by this language: "Again assuming that this amendment would be invalid if adopted we conclude that under the exceptions to the general rule that questions presented by the petition are proper for consideration at this time, that is, before submission of the proposed amendment to a vote of the people." The decision on the first appeal of this case is stated in this language: "The conclusion arrived at, therefore, on the facts as set forth in the petition and under the noted exceptions to the rules that the courts will not in advance of passage or adoption of legislation enjoin or inquire into the validity or constitutionality thereof, is that a situation has been presented which calls for a judicial declaration that the holding of the contemplated election would be invalid, and that an injunction to restrain the holding of such election is proper. On the same basis it is concluded that the city council should be declared to be under a duty and obligation to proceed with the construction of an auditorium pursuant to the named amendments to the city charter now in existence and on the site which has been procured for that purpose." The decree of the district court was reversed and "the cause remanded with directions to enter a decree in accordance herewith." The mandate to the district court stated that this court found that the holding of the contemplated election would be invalid; that an injunction to restrain

the holding of such election is proper; that the city council should be declared to be under a duty and obligation to proceed with the construction of an auditorium pursuant to the amendments of the city charter now in existence and on the site which had been procured for that purpose; and that this court had reversed the judgment and remanded the cause with directions to enter a decree in accordance with the opinion of this court, a copy of which was attached to the mandate. Noble v. City of Lincoln, *supra.* The district court on May 7, 1953, rendered and entered judgment upon and in accordance with the mandate and it has since been effective and final.

Appellants on June 19, 1953, filed a petition in this case. It incorporated therein as a part of it the record of all the proceedings had since the commencement of this litigation. It set out the tax levies made by virtue of the charter amendments concerning the construction of the city auditorium in Lincoln for each of the years 1940 to and including 1952; the amount of taxes collected each of the years for the auditorium fund, a total of $958,209.01; the expenditures pursuant to the charter amendments under the terms therein set forth of funds received by the city from tax levies and the sale of bonds, a total of $358,936.09; and it alleged outstanding general bonds of the city by virtue of the charter amendments in the amount of $550,000 containing the representation that they were issued for the purpose of acquiring real estate abutting on Fifteenth Street between K and R Streets in the city as a site for erecting thereon a building for an auditorium and other public purposes, equipping, and furnishing it, and for the purpose of opening and widening Fifteenth Street above described. It asserted that no plan had been approved by appellees and no contracts had been let for the erection of the auditorium building. Appellants asked a judgment of the court for further relief requiring that appellees proceed with the construction of an auditorium building

in accordance with the existing charter amendments relating thereto within such reasonable time as the court designated.

The facts alleged by appellants were substantially admitted by appellees and they asserted that since August 17, 1950, the date the mandate was filed in the district court, they had proceeded in an orderly and objective manner towards the construction of an auditorium on the site procured for that purpose; that since that date they had taken no action contrary to or in violation of the order of this court; that all their actions toward the ultimate construction of the building were in compliance with the charter amendments and the order of the court; that judgment was entered on the mandate on May 7, 1953, and 34 days thereafter the petition of appellants for a further order in the case was filed; that petitions have been filed with the city seeking an election to determine whether or not the provisions of the city charter for the construction of an auditorium should be repealed; that petitioners have requested an election be held upon the proposals stated in the petition; and that the petitions are legal and sufficient to require appellees to cause an election for the purpose requested.

Appellants replied to the answer by denial of its contents except appellants admitted the authenticity of the exhibits attached to the answer, and they alleged that any election as requested in the petitions referred to in the answer of appellees would be void for the reasons set forth to the other proposal in the original amended petition of the appellants.

A hearing was had and the district court found against appellants and dismissed their petition. The present appeal is from that action of the court.

The conclusion of the court on the first appeal of this case that the city council of Lincoln was obligated to proceed with the construction of a building for an auditorium and other public purposes as authorized by amendments to the charter on the site procured there-

fore was the result of and was based upon several legal principles. One of them was that funds authorized by popular vote for a specific purpose may not be lawfully diverted and devoted to any other purpose whatsoever, in the absence of a sufficient change of condition subsequent to the authorization granted therefor, because they constitute trust funds and may usually only be used for the purpose for which authorized. This was supported and emphasized in the opinion by quotations as follows: "In addition to the reasons specified above, it would seem that the appropriation of the moneys for a purpose other than that for which it was raised would be an illegal and improper diversion of said fund." People ex rel. Osborn v. Board of Trustees, 119 Misc. 357, 196 N. Y. S. 459. "Funds raised by a bond issue for a specific purpose by popular vote can not be diverted to any other purpose whatsoever. They constitute trust funds to be used only for the purpose for which the bonds were voted. * * * Good faith with the voters requires that these funds should be used in paving State-aid roads which had been designated at the time of the passage of this resolution and which were in existence at the date of the election." Marks v. Richmond County, 165 Ga. 316, 140 S. E. 880.

The purpose for which the funds were authorized in this instance was limited not only to the improvement of a designated portion of a street of the city and the erection of a building for public purposes but it was also restricted to a site for the building adjacent to the described part of that street. The purpose expressed in the authorization includes the location of the building, and the authority to carry out the purpose provides for trust funds usable only for the purpose for which they were voted to improve Fifteenth Street and to construct a building for an auditorium and other purposes on the site acquired therefor. The decision of the court in this case was not merely that a proposed election to amend the charter of the city so as to change

the location where an auditorium is to be built is illegal but it was also implicitly a holding that any election which would defeat the purpose as stated above would be illegal. In this regard it makes no difference whether the defeat of the purpose was intended to be accomplished by amendment or by repeal. The right to amend an authorization made by vote of the electors, such as a change of the location of a building from a site acquired for it in the manner and within the area designated in the authorization, is indistinguishable from the right to repeal or rescind it.

What is said herein does not mean that authority granted by the electors of a city may not in any situation be subsequently altered or rescinded by another election. It may be conceded that an authorization by the electors of a city to its governing body to undertake a project for the city at the expense of the taxpayers thereof may be changed or rescinded by another vote of the people before substantial indebtedness has accrued or expenditure been made because of it or if such a change of conditions intervenes that the project cannot be completed on the terms imposed by the grant of authority or if completed the project, because of the new conditions, would be inappropriate for or incapable of performing the service contemplated or of accommodating the activities intended to be carried on by virtue of it. A decision concerning that subject, however, is not appropriate because there is no situation of that character in this case. Appellees assert that there is no restriction upon the number of elections that may be had in the city of Lincoln on any subject appropriate to a home rule charter.

The pending petitions seeking another election concerning the auditorium matter request a vote of the electors of the city on the proposals to repeal the parts of the charter which provide for the construction of an auditorium on the site acquired for that purpose by the city council acting upon authority granted it by the

charter. Stated differently the repeal sought is all charter provisions concerning the construction of a building for auditorium purposes in Lincoln. The petitions contain, however, an important additional proposal. It is that in the event that a vote is sufficient to accomplish the repeal above alluded to "then the city council is hereby directed to place all money collected under said sections in a separate fund, to be used for the retirement of all outstanding bonds and obligations against the said Auditorium funds, and any surplus remaining shall be by the said city council placed in a reserve or trust fund, to be held and used only for the purpose of erecting an auditorium as may be directed by the voters of the city at an election where the question of the disposition of said funds shall be submitted. That any property heretofore acquired for auditorium purposes, be and the same hereby is set aside and dedicated for general municipal purposes." Any intention that the quoted language respects the holding of the court in this case on the first appeal that the funds in question are trust funds is futile, since the fund designated therein a "trust fund" may be "used only for the purpose of erecting an auditorium as may be directed by the voters of the city at an election where the question of disposition of said funds shall be submitted." This is obviously intended to provide that the fund can only be used to erect an auditorium as directed as to the location thereof and as to all other matters affecting it "by the voters of the city at an election" to be held at some future time. This is precisely what this court said in the first appeal of this case would be illegal since the voters have already directed that the funds be used for the purpose of erecting an auditorium, the improving of a part of Fifteenth Street, and the site for the building has long since been acquired strictly as authorized. Any election as suggested by this provision to decide the disposition of the funds if the proposal were adopted would necessarily include, even if it was not confined to, the

selection of a location for the building to be used for auditorium purposes. This is evident from the last sentence of the proposal that "any property heretofore acquired for auditorium purposes, be and the same hereby is set aside and dedicated for general municipal purposes." The word property therein is not otherwise defined but it clearly is intended to describe real property since the previous portion of the proposal disposes of "the fund" for use in the construction of an auditorium building. The petitions last filed seeking another election are an effort to do by repeal and amendment of parts of the charter what was adjudicated by this court herein could not be done by amendment alone. That this is an invalid distinction and is impossible of success is demonstrated by what is said in the opinion in this case and in State ex rel. Ballantyne v. Leeman, 148 Neb. 847, 32 N. W. 2d 918, where it was held that a proposed ordinance of the city of Omaha to select a site for its proposed auditorium by virtue of authority previously granted by a vote of the electorate of the city was not subject to a referendum election. The court in the opinion in this case made this comment with reference to the Omaha auditorium case: "It is true that the action there was directed at a proposed referendum upon a city ordinance and not an election upon a proposed charter amendment, but in view of the expression of the court in that opinion this does not appear to be of controlling importance. The ground of the determination was that after the power of selection was conferred on the city council the matter of selection became an executive function and not legislative and could not be interfered with by a further vote of the people of the city."

Another election concerning the subject of this litigation for the purposes stated in the petitions last filed may not be had because these propose that the real estate purchased by the city council as a site for the building, authorized to be constructed in compliance

with the mandate of the voters of the city by the application and use of funds provided for that specific purpose as the location of the auditorium building and to accommodate the activities the building was intended to house and serve, be dedicated to general municipal purposes. The site was property authorized to be acquired and it was purchased for a specific purpose and it cannot, under the circumstances of this case in which no change of conditions since the authority was granted is shown, be diverted and devoted to "general municipal purposes" or any other purposes whatsoever. It is impressed with a trust and good faith with the voters and the taxpayers of the city requires that it be used for the purpose for which it was acquired.

Likewise the proposed election may not be held because of estoppel of the city to hold another election wherein the issue would be to nullify the specific purpose previously adopted after taxes have been levied and collected, bonds issued and sold, real estate purchased and condemned, and a part of the work intended executed at a cost and expenditure of more than $300,000 by virtue of the mandate of the voters. In the opinion of the court in this case on the occasion of its first appearance many authorities were referred to in support of the conclusion that under the doctrine of estoppel legal action may be maintained to test the validity of proposed legislation before its adoption when a city acting in its municipal capacity had gained a clear and decided advantage by the acts relied upon to constitute the estoppel. Following the citations referred to above the court said: "None of the cases cited bear directly upon the question of the amendment to the home rule charter of a city. They do however point out very definitely that, where a political subdivision has by vote of the people given to the governing body a power and a mandate, and has implemented the power and mandate by authorization of bond issues and collection of taxes, and pursuant to such authorization and mandate steps

have been taken to effect the purposes contemplated, the question of whether or not a subsequent election may be held, the purpose of which is to effect a change in the authorization and mandate, is a matter for judicial inquiry and interpretation."

The opinion in this case further asserts the action could be maintained to test the validity of the proposed legislation of the city then in issue if the passage of it would result in irreparable loss or injury beyond the power of redress by subsequent judicial proceedings. The court found that the facts asserted by appellants, if accepted as true, were sufficient to show that the "total of all funds expended would be irretrievably lost for the purposes for which they were raised and expended except possibly the amount invested in the site."

That opinion recognizes and approves the principle of law that funds procured by taxation or by bonds issued and sold, authorized for a specific purpose by a vote of the electors, may not be legally diverted or devoted to any other purpose because they constitute trust funds and good faith with the electorate requires that they be used only for the purpose stated in the authorization.

The opinion concluded and adjudicated that a situation had been presented which required a judicial declaration that the holding of the contemplated election would be invalid; that the holding of such an election should be enjoined; and that the city council of Lincoln should be declared to be obligated to construct an auditorium in accordance with the amendments to the city charter then in existence on the subject and upon the site which had been purchased for that purpose.

All the material facts alleged by appellants as shown by the record on the first appeal are established in the record presented by this appeal. The matters contained in the opinion became and are the law of the case and they are applicable to and decisive of this appeal except as to the sufficiency of the showing of appellees herein to relieve them from the obligation to comply with the

adjudication made by direction of this court. The decision of questions 'presented to this court in reviewing the proceedings of the district court becomes the law of the case, and for purposes of the litigation, settles conclusively the matters adjudicated expressly or by necessary implication. It extends and applies not only to questions actually and formally presented but to all existing in the record and necessarily involved in the decision. Weisenmiller v. Nestor, 154 Neb. 839, 49 N. W. 2d 679; Callahan v. Prewitt, on rehearing, 143 Neb. 793, 13 N. W. 2d 660; Hensley v. Chicago, St. P., M. & O. Ry. Co., 126 Neb. 579, 254 N. W. 426; Skeffington v. Kearney Savings & Loan Assn., 124 Neb. 175, 245 N. W. 774; Wells v. Cochran, 98 Neb. 725, 154 N. W. 245; Helming v. Forrester, 92 Neb. 284, 138 N. W. 190.

Appellants challenged the petition in intervention by general demurrer. It was overruled. The interveners alleged that they were taxpayers and electors of the city of Lincoln and that they had an interest in the matter in litigation in this suit. There is statutory authority for any one who has or claims an interest in the matter in litigation to become a party to the action. § 25-328, R. R. S. 1943. The interest required is a direct and immediate legal interest of such a character that the person seeking to intervene will either lose or gain by the direct operation and legal effect of the judgment which may be rendered in the action. The ultimate facts must be alleged by him evidencing his interest in the matter in litigation and an averment that he has an interest in the subject matter is a conclusion and is not sufficient to permit intervention. Schroder v. City of Lincoln, 155 Neb. 599, 52 N. W. 2d 808; Drainage District v. Kirkpatrick-Pettis Co., 140 Neb. 530, 300 N. W. 582; Cornhusker Electric Co. v. City of Fairbury, 131 Neb. 888, 270 N. W. 482. Contrary to any claim that there was fraud, inefficiency, or lack of diligence on the part of appellees in their efforts herein to assert and protect the rights of the city, its officers, and inhabitants,

the petition of the interveners asserts that the city of Lincoln is defending the suit "on the basis of its good faith." This negatives any inference of fraud, collusion, or inattention or that their interest in the litigation as taxpayers was not being properly represented. Taxpayers are not qualified to intervene in matters of public interest that are prosecuted or defended for a governmental subdivision by its proper officials. Best & Co., Inc. v. City of Omaha, 149 Neb. 868, 33 N. W. 2d 150; City of Omaha v. Douglas County, 125 Neb. 640, 251 N. W. 262; State ex rel. Randall v. Hall, 125 Neb. 236, 249 N. W. 756. The demurrer to the petition of the interveners should have been sustained because it did not allege facts showing they had a legal interest in the litigation. The interveners may not complain of, neither were they prejudiced by, the failure of the trial court to grant or deny their petition at the conclusion of the hearing of the matter.

This appeal developed from the petition of appellants for further relief based on the declaratory judgment in this case, the requirement of the trial court that appellees show cause why it should not be granted, the attempt of appellees to show such cause, and the denial of further relief to appellants by the district court. § 25-21,156, R. R. S. 1943. The appellees assert that there are only two issues to be decided: Whether or not the filing by electors of Lincoln of legal and sufficient petitions requesting an election to submit charter amendments to repeal all existing charter provisions relating to a city auditorium is sufficient reason to relieve appellees from further compliance with the judgment rendered in the case as a result of the first appeal. This has been determined adversely to appellees by what has been said herein. The remaining issue as stated by appellees is whether or not the actions of the city council toward the construction of a city auditorium on the site purchased for that purpose are sufficient to sustain the order of the trial court that cause had been shown

by appellees of a character to justify a refusal of further relief to appellants and to warrant a dismissal of their petition.

The findings of the trial court were in substance that legal and sufficient petitions of electors had been filed requesting an election on proposals to repeal the charter provisions pertaining to the construction of an auditorium, and that the city council had taken numerous official actions since the mandate of this court reached the district court on August 17, 1950, "relating to its duties concerning the proposed construction of a City Auditorium." Appellees made no objection to or assault on the opinion or the judgment rendered in the district court by direction of this court. They say that they have had "a continuing planned and pursued course of action to carry out" the order of the court. They produced evidence of more than 35 official acts "all tending toward the completion of an auditorium" at the site they selected and purchased as the location of it. They did not plead an excuse for not complying with the judgment in this case, lack of ability to do so, or that they had been prevented by any fact or condition but they assert that they "had shown cause" why further relief should be denied appellants, that is, that they had been complying with the judgment and that they intended to satisfy its requirements. They assert that they were in a "position to advertise for bids, let contracts and proceed with construction when faced with legal and sufficient petitions requiring them to submit at an election the proposed new charter amendments" to repeal all existing charter provisions authorizing the construction of an auditorium building. They asked this court to extricate them from the dilemma of being obligated by court decree to construct the auditorium on the site acquired for it and the mandate of the law, as it is contended by many, to submit to the electorate the repeal of the charter amendments relating to the building of the auditorium. They did not contend

they should do the latter because no valid judgment has been rendered. They suggested the obvious that they could not do both.

When the mandate was issued in this case, and for some time thereafter, the actual construction of the building was restricted because the government controlled steel and there was a scarcity of other materials. This did not affect preparation and adoption of plans and specifications, the completion of details, and a general program for the erection of the building when the restrictions were removed and the scarcity of materials ceased. The showing of appellees is that an allotment of restricted and scarce materials was not applied for until the middle of October 1952, but there was a resolution of the city council of June 2, 1952, directing the mayor to do so. The application for an allotment of these was granted by the National Production Authority on January 7, 1953, the first allotment to be available during the second quarter of the year. After the approval no action was taken that could not have been accomplished during the last half of 1952. Subsequent to January 7, 1953, when it was learned that steel would be available in April 1953, no significant action was taken toward the construction of the building. The architects filed a cost estimate on March 30, 1953, but nothing was done thereafter to the time of filing of the petition of appellants for additional ·relief, except a newly appointed auditorium advisory committee made a report on April 20, 1953. Thereafter nothing was "said" about constructing or not constructing an auditorium building until the mayor reported to the city council on June 1, 1953, about the location of the building and the problem of whether or not the city council should submit a charter amendment at another election to have the electorate demonstrate their preference for a location for the building. The record sustains the conclusion that no direct action toward the actual erection of an auditorium building was had after the mandate

of the court was issued in this case except during about 3 months immediately following the decision of the court on the first appeal. There was no such alacrity or enthusiasm for the accomplishment of the work as the determination and adjudication of the court herein contemplated and required of appellees. The disposition of the city authorities to accommodate the desire of a few for another election stagnated, if it did not entirely neutralize, any determination they had to comply with the mandate of the court to construct an auditorium building on the site purchased.

A showing of cause for not satisfying a duty required by a final judgment of a court is that the party obligated to perform it has promptly, diligently, and as effectually as the situation permitted attempted to perform but he had been prevented by the occurrence or existence of something outside of his control. See, In re Estate of Bingaman, 154 Neb. 240, 47 N. W. 2d 435. Appellees did not show cause why further relief sought by appellants should not have been granted. The findings and order of the trial court in this regard are wrong.

The judgment in this case should be and it is reversed and the cause is remanded to the district court for Lancaster County with directions to it to render and enter a judgment in the case enjoining appellees and each of them from taking any action in reference to holding or holding an election as requested by petitions of electors of Lincoln, now on file with the city and described in the opinion, for submission to the voters proposals to repeal all provisions of the charter of the city relating to the construction of a building and equipping it for auditorium purposes; and directing and ordering appellees to proceed with reasonable promptness, the circumstances properly considered, with the construction and erection of a building for auditorium purposes as authorized and directed by existing charter amendments on that subject, on the site which has been purchased

and acquired for that purpose and in harmony with the adjudication hereinbefore made in this case by the district court upon direction of this court.

REVERSED AND REMANDED WITH DIRECTIONS.

YEAGER, J., dissenting.

I respectfully dissent from the opinion adopted by the majority in this case. I do not think the majority opinion responds properly to the questions presented for consideration and determination. I think it is in essence a long step toward destruction of the constitutional division of the powers of government. To my mind it is an unwarranted invasion of the legislative by the judicial department.

This is an appeal from further proceedings in Noble v. City of Lincoln, 153 Neb. 79, 43 N. W. 2d 578, wherein the opinion was filed July 13, 1950.

The majority opinion here draws by quotation copiously from the former opinion, but these quotations, taken as they are out of context, and the conclusions based thereon, do not, as I view them, properly reflect the true purport and meaning of that opinion or its result, and do not contain an application of constitutionally and traditionally appropriate principles.

I shall not attempt to set forth in detail what I think are the specific fallacies of the majority opinion. I prefer simply to set forth what I think a proper opinion should contain. This together with the former opinion I think will demonstrate the fallacies of which I make complaint.

The question involved in the former appeal was a single one defined and declared in the opinion as follows: "The question for determination here therefore is as to whether or not the petition states a cause of action."

The adjudication therein was pronounced as follows: "For the reasons herein set forth the decree of the district court denominated journal entry is reversed and the

cause remanded with directions to enter a decree in accordance herewith."

The decree of the district court sustained a demurrer to the petition and dismissed the action. The adjudication here meant, and could not have meant more, that the district court was directed to vacate the dismissal and overrule the demurrer.

This was never done. Had it been done the defendants would have had the right to answer. "Upon a demurrer being overruled, the party who demurred may answer or reply if the court be satisfied that he has a meritorious claim or defense and did not demur for delay." § 25-851, R. R. S. 1943.

There is nothing to indicate that if the defendants had filed an answer it would have been rejected on the ground that it did not set forth a meritorious defense.

After the opinion of this court was filed and on August 16, 1950, a mandate was issued to the district court as follows:

"This cause coming on to be heard upon appeal from the district court of Lancaster county, was argued by counsel and submitted to the court; upon due consideration whereof, the court finds error apparent in the record of the proceedings and judgment of said district court and finds that the holding of the contemplated election would be invalid and that an injunction to restrain the holding of such election is proper, and finds further that the city council should be declared to be under a duty and obligation to proceed with the construction of an auditoruim pursuant to the amendments to the city charter now in existence and on the site which has been procured for that purpose. It is, therefore, considered, ordered and adjudged that said judgment of the district court be, and hereby is, reversed and cause is remanded with directions to enter a decree in accordance with the opinion of this court this day filed herein; * * *."

No further proceedings were had until April 16, 1953,

when judgment was apparently rendered on the mandate by the district court. This judgment does not appear as such in the transcript but it appears by recital in a further judgment on the mandate entered May 7, 1953, as follows: " 'On motion of plaintiffs through counsel in open court, judgment is hereby entered in accordance with the opinion of the Supreme Court filed in this cause.' "

The judgment of May 7, 1953, quotes the mandate and contains, among other things not necessary to quote here, the following: "IT IS THEREFORE, CONSIDERED, ORDERED, AND ADJUDGED by this court, that judgment be and hereby is entered in accordance with said mandate and judgment of the Supreme Court."

No appeal has been taken from this judgment. It has become final and binding upon the parties to it. Kerr v. McCreary, 86 Neb. 786, 126 N. W. 299; State v. Several Parcels of Land, 87 Neb. 84, 126 N. W. 1001.

This judgment amounts to and is an adjudication that the city of Lincoln is required to do and perform in accordance with what this court said were its duties and obligations if the allegations of plaintiffs' petition were true. The city does not contend otherwise. In truth this is admitted by pleadings and briefs filed herein.

One of the effects of this judgment was to judicially declare that from the date of adoption of the amendments to the city charter the city and its duly constituted officers were bound by the amendments and were under a bounden duty to proceed agreeable to the terms and requirements thereof.

Another effect of the judgment was to provide a means of compelling performance of the duty imposed by the amendments.

On June 19, 1953, the plaintiffs filed a petition in the district court denominated Petition for Further Relief, the primary purpose of which was to secure a mandatory order requiring the city and its officers to proceed with the necessary steps to construct, and to start con-

struction of, an auditorium pursuant to the charter amendments. They prayed for an order against defendants to show cause why they should not so proceed.

An order to show cause was issued and in response thereto the defendants filed an answer and showing. In the answer and showing the defendants in substance set forth that efforts, which were reasonable under the circumstances, had been made over the entire period to comply with the charter amendments.

In an effort to show that there should not be an order requiring them to further proceed at this time and that performance should be held in abeyance they pleaded that petitions under law and the charter had been filed seeking an election to determine whether or not the charter amendments involved herein should be repealed. The effect of the answer in this respect is to say that an election on the petitions is proper under law; that if the vote on the petitions was in favor of repeal the amendments would be repealed; that in that event the duty of the defendants would be removed; and that in the light of these eventualities an order of court requiring them to proceed pending the outcome of an election would be premature.

To the answer the plaintiffs filed a reply. By it the issues presented by the petition and answer were generally joined. Further it declared that the proposed election referred to in the answer would be void and a nullity.

Certain parties were permitted to intervene herein but it is not deemed necessary to do more than to note that fact since no adjudication was ever made with reference to them except that they were permitted to intervene.

The case came on for trial to the court at the conclusion of which a decree was rendered. The pertinent part of the decree is a finding that the city of Lincoln and the members of the city council showed sufficient ground for refusal at the time of the further relief sought

by the petition of plaintiffs. Adjudication was made accordingly and the petition dismissed.

From the decree the plaintiffs have appealed.

A bill of exceptions has come to this court but it contains nothing pertinent to the issues involved except a stipulation of fact as follows: "At the present time, almost three years after the said opinion of the Supreme Court (the opinion filed July 13, 1950), no auditorium has been built," and a further stipulation that there had been filed a sufficient petition of electors for the submission of repeal of the amendments of the charter which were involved in the original action.

The consideration and determination of this appeal must depend upon admissions in the pleadings and these stipulations.

This is true since there is nothing else in the record which this court may properly consider in determining whether or not the adjudication of the district court was correct. In effect the case comes here as a case for judgment on the pleadings except to the extent that the judgment may be influenced by the stipulations.

The admissions of pleadings when they are complete, unequivocal, and without controversion will sustain a judgment.

The rule in this respect is stated as follows in 71 C. J. S., Pleading, § 160, p. 333: "A fact alleged in a complaint is sufficiently established by its admission in the answer. As long as it stands on the record a fact admitted by the plea or answer must be taken as true, becomes evidence in the case, and supports a presumption or inference of such other facts as normally follow from the establishment of such fact."

In Fidelity Finance Co. v. Westfall, 127 Neb. 56, 254 N. W. 710, it was said: "Where an allegation in the petition is admitted by the answer, the fact is established for the purpose of the case, and the court cannot disregard it." See, also, Bonacci v. Cerra, 134 Neb. 476,

279 N. W. 173; Barry v. Barry, 147 Neb. 1067, 26 N. W. 2d 1.

The same rule applies in the case of admissions in a reply to an answer or other pleading. Bonacci v. Cerra, *supra;* Provident Savings & Loan Assn. v. Booth, 138 Neb. 424, 293 N. W. 293; In re Estate of McCleneghan, 145 Neb. 707, 17 N. W. 2d 923; Barnhart v. Henderson, 147 Neb. 689, 24 N. W. 2d 854.

The petition exclusive of the prayer is in 14 paragraphs. The defendants by their answer have admitted paragraphs 1 to 10 inclusive and paragraph 12. This is an admission of all of the substance of what has already been summarized herein as the basis of plaintiffs' claimed right to further relief. The other three paragraphs, one of which is purely formal, are of no pertinence in the determination here.

The only parts of the answer of the defendants other than the admissions are the allegations that valid petitions have been filed for an election upon the question of whether or not the charter amendments in question shall be repealed, that the city has been proceeding toward construction, and a prayer for dismissal and equitable relief.

The reply does not admit the authenticity and sufficiency in form of the petitions for an election but this is admitted in the stipulations contained in the bill of exceptions. Further replying the plaintiffs allege that any such election would be void and a nullity on the basis that the proposed amendment which was considered in the former opinion of this court was declared null and void.

The effect of the reply and stipulations is to say that the defendants were and are under a duty and obligation and bound to proceed with the construction of an auditorium pursuant to the terms of the amendments to the city charter and that injunction was proper to restrain the holding of an election on a proposed amendment the purpose of which was to change the site of the

auditorium from the site designated by the charter amendments.

The further effect is to say that there has been filed a sufficient petition for an election on the question of whether the amendments shall be repealed.

The substantial contention and theory of the defendants with respect to this proposed election is that if the vote in favor of repeal is sufficient then any and all obligations flowing from the amendments and from the judgment on the mandate will be removed.

The substantial contention and theory of the plaintiffs is that the defendants are without legal power or authority to submit the propositions contained in the proposed repealing amendment at an election, and if it should be submitted and approved by the electors it would be null and void.

Specifically insofar as the record is concerned the finding and adjudication of the district court were based upon the theory of the defendants that delay was proper until the proposed election was held and the results ascertained. If any other considerations were involved they are not made to appear by the bill of exceptions or by admissions in the pleadings.

The plaintiffs contend that there can be no amendment or repeal of the amendments providing for the construction of the city auditorium and that an election having that for its purpose would be null and void.

The plaintiffs rely for support of their contention upon our former opinion in this case. The opinion however does not support that contention. A careful reading of that opinion discloses that the making of any such pronouncement was avoided.

The question presented by the petition in that case was that of whether there was a remedy in equity to prevent the city by election to amend the charter amendments by removing from the designated location and empowering the city council to designate a location, where the city of Lincoln by vote of electors had adopted

amendments to its charter providing for the construction of a city auditorium at a designated location, authorizing a tax not to exceed $75,000 annually for a period of 10 years for street widening, purchase of site, erecting the building, and equipping and furnishing the proposed building; in pursuance of which the city issued $1,100,000 in general obligation bonds of which amount $715,000 in bonds were outstanding at the time of the commencement of the action; in further pursuance of which the site contemplated had been purchased for $46,750; in further pursuance of which street improvements at a cost of. $270,250 had been made; in further pursuance of which $22,943.50 for architect's study, plans, and specifications had been expended; in further pursuance of which. $2,000 as part payment for an ice rink had been spent; in further pursuance of which tax levies in varying amounts from 1940 to 1949 inclusive had been made for the retirement of the general obligation bonds; and in further pursuance of which the city was authorized to issue bonds in the additional amount of $1,500,000 without further consent of the voters.

This court in the former opinion held that there was a remedy in the following statement: "The conclusion arrived at, therefore, on the facts as set forth in the petition and under the noted exceptions to the rules that the courts will not in advance of passage or adoption of legislation enjoin or inquire into the validity or constitutionality thereof, is that a situation has been presented which calls for a judicial declaration that the holding of the contemplated election would be invalid, and that an injunction to restrain the holding of such election is proper."

It therefore becomes necessary to look elsewhere for authority for the determination of this question.

The authorities cited and the reasoning advanced by the defendants support a conclusion generally that that which may be put into a city charter by amendment

properly adopted may be in the same manner removed. We think the conclusion contended for in this respect by the defendants must be sustained.

Article XI, section 2, of the Constitution of Nebraska, authorizes the adoption of a charter for its own government by any city having a population in excess of 5,000 inhabitants. Article XI, section 4, of the Constitution, makes provision for amendments to the charter. The section contains no limitation as to the subject matter which shall be contained in an amendment. The section also provides for repeal. It provides that repeal shall be by electoral vote the same as amendment.

The people of the city of Lincoln in the adoption of their charter acted legislatively and an election the purpose of which is to determine whether or not there shall be an amendment thereof would be legislative action. Consumers Coal Co. v. City of Lincoln, 109 Neb. 51, 189 N. W. 643; Noble v. City of Lincoln, *supra*.

"It is a general rule that the courts will not in advance of passage or adoption of legislation enjoin such legislation or inquire into the validity or constitutionality thereof." Noble v. City of Lincoln, *supra*.

Exceptions to this general rule have been noted in Noble v. City of Lincoln, *supra*.

We do not think the exceptions noted in that opinion may be said to have controlling significance here where the proposal is for the abandonment of the entire auditorium project by repeal of the amendments providing for it.

It is true that elements regarded as basic in the exceptions to the general rule noted therein may exist here but the opinion did not turn on basic elements contained in the noted exceptions. It turned upon alleged facts, which, if true, would cause irreparable loss and damage, not by an abandonment of the primary purpose but by changing an incident of that purpose.

Here on the other hand the aspect of the proposal is entire and is not limited to an incident, and the purpose

and consequences of the proposed repeal cannot be said factually or presumptively factually to be known. They can only be arrived at by conjecture and speculation.

Under these circumstances it appears that the general rule and not any exception should be controlling.

Under the general rule the courts may not enjoin the enactment of legislation validly presented at an election and may not encroach upon legislative processes and speculate as to whether or not the enactment will be passed, or if passed, what questions may arise in the future involving its validity. 28 Am. Jur., Injunctions, § 72, p. 267, § 176, p. 365, § 177, p. 366; Schroeder v. Zehrung, 108 Neb. 573, 188 N. W. 237; Goodland v. Zimmerman, 243 Wis. 459, 10 N. W. 2d 180; People ex rel. Fitnam v. City of Galesburg, 48 Ill. 485; People v. McWeeney, 259 Ill. 161, 102 N. E. 233, Ann. Cas. 1916B 34; Lamb v. B., C. R. & M. R. Co., 39 Iowa 333.

We hold therefore the duly constituted officers of the city of Lincoln may properly and legally submit, by proper petition, to the electors of the city the question of whether or not the amendments providing for the construction and location of a city auditorium shall be repealed.

We further hold that if the question shall be submitted on valid petition and that the proposition is carried by a sufficient vote that such vote would effect a repeal, and in that event the present duty to construct an auditorium would no longer exist.

Thus by reason of the judgment on the mandate the defendants are under an obligation to proceed with the construction of an auditorium. Also they are under a mandate imposed according to law by reason of the filing of the petitions for an election to submit to the people of the city of Lincoln the question of whether or not the obligation to build the auditorium shall be withdrawn.

If they are required to proceed at once, in reason and of

course, expense would be entailed. If on the holding of the election the voters shall validly withdraw the obligation to construct the auditorium, again in reason and of course, this expense would occasion a loss which could never be retrieved.

It would appear therefore that justice and equity and a due regard for the best interests involved should permit a further delay in the performance of the obligation of the city to build the auditorium sufficient to permit the holding of an election based on the petitions on file with the city. Hiddleson v. City of Grand Island, 115 Neb. 287, 212 N. W. 619.

WENKE, J., concurs in this dissent.