REQUESTED BY: Brian F. Beckner, Polk County Attorney, Osceola, Nebraska
May the funds arising from the sale of the county farm authorized by the voters to be expended for a county care home be used for the construction of a county jail if a care home is no longer needed?
Yes, upon another vote of the electorate.
In the general election of 1966 a majority of the electors of Polk County authorized the county commissioners to sell the county farm and deposit the funds derived therefrom in a fund for the use of the future construction of a care home for aged and infirm. The home was never built.
In 1982 the board of county commissioners recognized that there was no longer a need for a county care home due to the presence of a number of privately operated care homes in the county.
At the time of the farm sale Neb.Rev.Stat. §§ 23-107
and 23-118 required the county board to submit to the electors the question of the sale of real property belonging to the county if it had been acquired at a cost of more than $3,000. We assume this was the reason the sale was submitted to the electors in 1966. Since that time the statutes have been amended and repealed so that the county board now has the authority to sell the public grounds of a county, irrespective of the cost, without submitting the proposition to a vote of the electors.
In two cases before the Supreme Court of Nebraska involving the construction of Pershing Auditorium in Lincoln, the mandate of the voters authorizing the construction of the city auditorium was considered by the court. In both cases the city was attempting to amend the city charter to authorize a change in the plans from that which had originally been approved by the voters. The Supreme Court of Nebraska in enjoining the proposed changes stated in part as follows:
 Funds authorized by popular vote for a specific purpose may not be lawfully diverted and devoted to any other purpose whatsoever, in the absence of a sufficient change of condition subsequent to the authorization granted therefor, because they constitute trust funds and may usually only be used for the purpose for which authorized.
. . . .
 What is said herein does not mean that authority granted by the electors of a city may not in any situation be subsequently altered or rescinded by another election. It may be conceded that an authorization by the electors of a city to its governing body to undertake a project for the city at the expense of the taxpayers thereof may be changed or rescinded by another vote of the people before substantial indebtedness has accrued or expenditure been made because of it or if such a change of conditions intervenes that the project cannot be completed on the terms imposed by the grant of authority or if completed the project, because of the new conditions, would be inappropriate for or incapable of performing the service contemplated or of accommodating the activities intended to be carried on by virtue of it.
Noble v. City of Lincoln, 158 Neb. 457 at 464, 465,63 N.W.2d 475, 63 N.W.2d 475 (1954). See also, Noble v. Cityof Lincoln, 153 Neb. 79, 43 N.W.2d 578 (1950).
In that case the court pointed out that a considerable amount of money had been raised by a bond issue and that property had been acquired for the site.
In addition to the fact that the statutes have been changed since the original election in the present case, there has apparently been no expenditure of the funds toward the care home. You also indicate that there has been a substantial change in conditions in Polk County concerning the need for a care home. In the event of a lawsuit, a court might determine there had been a sufficient change to justify the county board in using the funds for a different purpose than authorized by the voters. This is no lead-pipe cinch, however.
Neb.Rev.Stat. § 23-120 (Supp. 1980) authorizes a county the size of Polk to construct a jail. This section limits the appropriation in any one year to $25,000 without approval of the voters unless the county has on hand funds accumulated from various sources, including the sale of county property.
In view of the county's present statutory authority to sell county property and the alleged change in circumstances, it could be argued that the county now has such funds on hand and that it could expend such funds for the erection of a county jail even though the appropriation exceeded $25,000 in one year.
However, in our opinion, the wiser course would be to submit to the voters the question of appropriating in excess of $25,000 in one year (assuming that much is needed) for the purpose of constructing a county jail and expending the funds accumulated from the sale of the county farm for such purpose. In this regard, we feel that the nature of the `trust' placed upon the funds by the vote of the electorate in 1966 creates a sufficient question whether or not there are funds `on hand,' within the meaning of § 23-120 (Supp. 1980), to remove the requirement of an election to construct a county jail when the appropriation exceeds the $25,000 limitation in any one year.
Respectfully submitted,
PAUL L. DOUGLAS Attorney General
Mel Kammerlohr Assistant Attorney General
APPROVED:
Paul L. Douglas
Attorney General